JAMES G. STOWE

*v.*

WILLIAM F. FLAGG *et al.*

1. CORPORATIONS—*can only be created by legislative enactment.* A corporation can not be constituted by agreement of parties. It can only be created by legislative enactment.

2. SAME—*under law of* 1857. The signers of the certificate described in the first section of the act in relation to the formation of corporations (Laws 1857, page 161) do not become a body politic and corporate, under the statute, by making the certificate. It is only upon the reception of the license issued by the clerk of the court, as provided for by the act, that they can have a corporate existence.

3. Stock is essential to the existence of a manufacturing corporation, under the act for the formation of such corporations. The integral parts of such a corporation are at least three stockholders.

4. STOCKHOLDER—*executory agreement to subscribe for stock in a corporation.* An executory agreement between individuals to take stock in a manufacturing corporation to be formed under the statute of 1857, made at the time of filing the certificate of incorporation provided for by that act, but

before the license required is issued, is not a subscription of stock, and does not make the parties thereto stockholders in the corporation when completed.

5. An agreement between parties about to form a corporation for manufacturing purposes, under the act of 1857, which provides for each of them putting in property, at a fixed value, as stock in the proposed corporation, and also provides who shall be officers of the corporation, and what compensation they shall receive, is not binding on the corporation when formed.

6. Parties, about to form a corporation for manufacturing purposes, filed a certificate of incorporation, and on the same day entered into an agreement by which they each agreed to put into the corporation, when formed, certain property, as stock, at a fixed price. Afterwards, a license was issued, as required by law, to complete the incorporation, but no books were opened, and no action taken with regard to stock, nor was the property conveyed to the corporation, but the parties to the agreement carried on their business in the name of the corporation, using the property so agreed to be put in as stock therein. After carrying on the business in this way for a time, misunderstandings arose between the parties, and one of them filed a bill in chancery for a settlement of their affairs: *Held*, that the property never became corporate property, but belonged to the parties, as an association of individuals, under their written agreement.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

August 10, 1870, James G. Stowe, William F. Flagg and Nathan F. Mathewson, made a certificate of incorporation, under the statute for the formation of corporations (Laws 1857, p. 161), which certificate was filed in the office of the Secretary of State October 5, 1870, and in the office of the circuit clerk of McLean county November 11, 1870, and said clerk, on the 12th day of said November, issued a license to said Stowe, Flagg and Mathewson, to carry on the business mentioned in the certificate, under the corporate name of "Empire Machine Works."

On the same day (August 10, 1870), the above named persons entered into a written agreement, whereby they agreed to associate themselves together for the purpose of manufacturing mowers and reapers, and general machinery, in Bloomington, in this State. Flagg agreed to remove and put up his then present planing mill, engine room and dry-house machinery, engine,

boiler and fixtures, on certain designated ground; Flagg, also, to complete the building then under construction (a brick building, 170 by 30 feet, which he was constructing under a similar contract entered into between him and Stowe alone, in March previous), by plans agreed upon by all parties; said building to be put into the company as capital stock, at actual cost, being shown by properly executed bills and vouchers from the parties furnishing the materials and labor; the whole material, labor, etc., to be purchased and paid for at the lowest cash prices, and the whole work to be executed in a proper, substantial and workmanlike manner; the first named building, machinery, etc., to be put into the company, as capital stock, at the sum of $7000. If it was not found desirable to move the brick, engine and dry-house, a suitable deduction was to be made from the above price. Flagg was to furnish three acres of land to the company, at $1000 per acre, with a clear, undisputed title, and to execute to the company his deed of general warranty; the land, also, to be put in as capital stock. He was, also, to take $10,000 of cash stock.

Stowe was to put into the company, as stock, his machinery, tools, etc., for the sum of $25,000 stock in the company.

Mathewson was to furnish, by proper transfer, the patents granted him on mower, hay-fork, etc., at the sum of $10,000 stock in the company.

It was further agreed to make the working capital the sum of $25,000; that other parties might unite and take the balance of the stock, or it could be taken by any of the three present stockholders. The above buildings were to be removed at once, and the new one completed without delay. Flagg, as president and treasurer, and Stowe, as superintendent and manager, were to act for one year, at a salary of $1500 each, commencing May 1, 1870; Mathewson to act as agent, at a salary of $1500 a year, to take effect August 1, 1870.

By-laws were adopted by the company August 10, 1870. August 15, 1870, Stowe, by an instrument in writing, transferred his machinery, tools, etc., to the company.

The by-laws so adopted provided that the annual meeting of the company for the election of officers should be held on the first Tuesday of May. The annual meeting for that purpose was called for the first Tuesday of May, 1871. Stowe objected to the election of officers, claiming that it was illegal, and no election was held. No stock was ever issued or subscribed, and no stock books ever opened, but Stowe, Mathewson and Flagg carried on business, under the name of Empire Machine Works, getting the building and machinery ready, but without any manufacturing until January, 1871. Stowe, by reason of dissatisfaction with Flagg, left the concern in January, 1871, and thereupon filed his bill in chancery, against Flagg and Mathewson, setting out the above facts, and alleging that the brick, engine and dry-house, described in the agreement, had not been removed by Flagg on the three acres of land; that Flagg had not conveyed said land to the company, nor had put into the company the building erected on the land, at its cost, but wholly refused so to do, and refused to exhibit vouchers for the cost, as provided by the contract, and that Mathewson had not transferred to the company the patents in the agreement mentioned, and praying for relief.

Upon final hearing on pleadings and proofs, the court rendered a decree, finding that, on the 10th day of August, 1870, the complainant and the defendants became and were incorporated under the general incorporation laws of the State, under and by the name and style of the Empire Machine Works; that thereupon the machinery, tools, etc., that complainant had agreed to put into the business, became vested in and thenceforth belonged to said corporation, and dismissing the bill.

Stowe brings the case here by appeal.

Messrs. SPENCER, WILLIAMS & BENJAMIN, for the appellant.

Mr. E. M. PRINCE, and Messrs. ROWELL & HAMILTON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question here presented is, whether there was a corporation, and the property involved had become corporate property.

There clearly was no corporation on the 10th of August, 1870, or until the 12th of November, 1870, the time the license was issued. A corporation can not be constituted by the agreement of parties. It can only be created by or under legislative enactment. The third section of the act relating to the formation of manufacturing, etc., corporations (Laws 1857, p. 161), provides that, "when the certificate (described in the first section) shall have been filed as aforesaid with the clerk of said court, and a duplicate thereof filed in the office of the Secretary of State, the said clerk shall issue a license to the persons who shall have signed and acknowledged the same, on the reception of which they and their successors shall be a body corporate and politic, in fact and in name, by the name stated in such certificate," etc.

The certificate here was signed and acknowledged August 10, 1870, but it was not filed in the office of the Secretary of State until October 5, and in the office of the circuit clerk November 11, and the license was not issued until November 12, 1870.

The signers of the certificate did not become a body politic and corporate, under the statute, by the making of the certificate, but it was only upon the reception of the license that there could have been a corporate existence.

Stock is essential to the existence of a manufacturing corporation, under the statute. The integral parts of such a corporation are at least three stockholders. Section four of the act referred to provides that "the affairs of such company shall be managed by a board of not less than three nor more than seven directors, who shall be stockholders therein, and who shall, after the first year, be annually elected by the stockholders," etc.

There was here no stock book opened, no stock issued, and, as we regard it, no stock subscribed for or taken in the corporation. There is no pretense of any subscription for stock, more than the written agreement of August 10, 1870, and appellees' counsel insist upon that as a stock subscription. That agreement, so far as it relates to stock, is evidently all executory, to take and put in stock at a future time. It does not purport that the parties thereby take or put in any stock. An undertaking to subscribe a certain amount of stock when books shall be opened, does not make the subscriber a stockholder, liable to calls. *Thrasher* v. *Pike County Railroad Co.* 25 Ill. 393.

The agreement is a mutual one, between three persons, containing various provisions and stipulations, each one's agreement being in view of all the several provisions being carried into effect as therein designated. This agreement could not be binding upon the subsequent corporation to be formed under the statute.

Stowe and Mathewson did not agree to take, respectively, $25,000 and $10,000 of stock absolutely, but the former was to put in his machinery, tools, etc., as stock, for $25,000 stock in the company, and Mathewson was to transfer his patents, etc., at the sum of $10,000 stock in the company.

The twelfth section of the act provides that nothing but money shall be considered as payment of any part of the capital stock of any such company, except real estate and personal property necessary to carry on the business of the company, which shall be received as payment only at a cash valuation, to be fixed by the appraisement of two disinterested persons, etc. Now, supposing the corporation, when it has occasion to act with reference to stock, should follow the statute, and only take the property at its appraised value, which should be less than the arbitrary values fixed upon it in the agreement. Clearly the parties would not be bound, by the agreement, to put in their property at the appraised value. The same may be remarked as to the building and land to be put in as stock by Flagg.

This agreement, too, assumes to appoint the parties to it officers in the company for one year, such as president and treasurer, superintendent and manager, and agent, and to fix the amount of their salaries. Suppose the corporation should see fit to choose its officers, and other ones, for itself, or to diminish these salaries, would, then, the agreements as to stock be obligatory?

No action whatever with regard to the subject of stock has been had since the making of the agreement.

Under section nine of the act, stockholders are liable to the extent of their stock. How much stock have the parties, and especially Flagg? He has evidently the chief interest in the concern. The agreement does not fix the amount of the stock he was to take, nor has it been ascertained as yet, according to the agreement or otherwise, what his stock would be.

We can not regard this agreement of August 10 as a subscription for stock.

No one, by the agreement, was to put in any cash stock, except Flagg $10,000; but he seems to have actually put into the company as stock no money or anything else. Mathewson testifies, that whatever money Flagg ever paid in was all credited to Flagg's account, as money loaned to the company. He did not understand that Flagg ever paid in any money as on his stock. On filing his answer, Flagg tendered with it, for the company, his warranty deed for the land and buildings, but never before. The testimony shows that Flagg did not carry out the contract fully in respect to completing the buildings within the time agreed upon, and this was a cause of difference between him and Stowe.

It was claimed by Flagg, that the sum at which Stowe was to put in his machinery, tools, etc., was too high; that the latter made false and fraudulent representations as to their value, they not being open to inspection at the time, and that their true value was not to exceed $15,000. These subjects of dispute, existing in regard to the performance of the agreement, further go to show the impropriety of regarding such an agreement as an actual subscription for stock, and that there was a necessity

of a future adjustment, in order to ascertain the amount of the stock which was to be subscribed for.

All seems to have been done under the articles of association of August 10, and before there could have been corporate existence by virtue of the issue of the license November 12. The by-laws were adopted and the officers elected previously; the transfer of property which Stowe made was August 15, and though business was subsequently carried on under the name of Empire Machine Works, that name had been adopted and used prior to August 10.

A certificate was made and filed and a license procured, and no further action would appear to have been taken in a corporate capacity.

In our view, the property here involved has never been changed into corporate property, but belongs to these parties as an association of individuals under their written agreement of August 10, 1870, and we are of opinion the appellant is entitled to maintain his bill for relief.

The decree will be reversed, and the cause remanded for further proceedings.

*Decree reversed.*