## WILLIAM GENT

*v.*

## MANUFACTURERS AND MERCHANTS' MUTUAL INSURANCE COMPANY.

*Filed at Ottawa November 20, 1883.*

1. CORPORATION—*can not contract until brought into being.* A corporation must have a full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business. Nor have the incorporators bringing it into being any power to bind it by contract, unless so authorized by the charter.

2. INSURANCE COMPANY—*can not insure before its complete organization.* Until a mutual fire insurance company has fully completed its organization by filing the certificate of the Auditor of Public Accounts with the county clerk that the corporators have deposited the requisite capital stock, the transaction of business in the name of the corporation is unauthorized.

3. The corporators or promoters of a proposed mutual fire insurance company are authorized to take applications for insurance, and premium notes, as a fund or capital to authorize the granting of the charter, and to enable the company to transact its business when organized; but, prior to organization, the making of an application and giving a premium note is only a proposition to insure in the company, and to receive a policy when the company shall have become capable of contracting and transacting business.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. A. D. EARLY, for the appellant:

Appellee was a corporation *de jure*, as well as *de facto*, before the contract was made with appellant. It had an existence sufficient for a charter, and for the election of directors, and the appointment of agents. Rev. Stat. chap. 73, secs. 1, 3, 6, 7, 8, 10.

The statute should not receive a construction converting every direction and detail of powers into a mandatory prerequisite of corporate existence. *Cross* v. *Pinckneyville Mill*

*Co.* 17 Ill. 54; *Tarbell* v. *Page,* 24 id. 47; *Baker et al.* v. *Administrator of Backus,* 32 id. 79; *Stone* v. *Great Western Oil Co.* 41 id. 85.

There is an unavoidable implication of a corporate existence, which antedates the making of the certificates required. The organization must necessarily be completed before they can be made. *Merrick* v. *Reynolds Engine and Governor Co.* 101 Mass. 381; *First National Bank of Salem* v. *Aling,* 117 id. 476; *Whitney* v. *Wyman,* 101 U. S. 392; *Johns* v. *People,* 25 Mich. 499; *Van Slyke* v. *Trempealeau County Mutual Fire Ins. Co.* 48 Wis. 683.

Appellant's rights are the same, even though appellee is a mutual company. The difference is clearly shown in the following cases: *Cumberland Valley Mutual Ins. Co.* v. *Schell,* 29 Pa. St. 51; *Ellenberger* v. *Protection Mutual Fire Ins. Co.* 89 id. 464; *New England Mutual Fire Ins. Co.* v. *Butler,* 34 Maine, 451; *Jones et al.* v. *Dana,* 24 Barb. 395; *Columbia Ins. Co.* v. *Cooper,* 50 id. 331; *Rosenbergher, Light & Co.* v. *Washington Mutual Fire Ins. Co.* 87 id. 207.

An oral contract of insurance is binding. Wood on Fire Insurance, sec. 4; *Hartford Fire Ins. Co.* v. *Wilcox,* 57 Ill. 180; *Hartford Fire Ins. Co.* v. *Farrish,* 73 id. 166.

If Holland did not have authority to make the contract, the subsequent ratification on the part of the company by its secretary, Ferguson, amounted to a previous authority. Angell & Ames on Corporations, (11th ed.) secs. 240, 304; Ewell's Evans on Agency, 49; Story on Agency, secs. 239, 248; *Randell* v. *Van Vechton et al.* 19 Johns. 59; *Episcopal Society* v. *Episcopal Church,* 1 Pick. 372.

Appellee having assumed to contract, and taking the benefit of the contract, is estopped to set up the defence of *ultra vires.* *Diversy* v. *Smith,* 103 Ill. 378; 2 Parsons on Contracts, 790; Bigelow on Estoppel, secs. 423, 511; Angell & Ames on Corporations, sec. 111, p. 96, and sec. 256; Morawetz on Private Corporations, secs. 106, 108, 142; *Bell's Gap Ry. Co.* v.

*Christy*, 54 Pa. St. 59; *Trumbull County Mutual Fire Ins. Co.* v. *Horner*, 17 Ohio, 407; *Grape Sugar Co.* v. *Small*, 40 Md. 395; *De Groff* v. *American Linen Thread Co.* 21 N. Y. 124; *Bissell* v. *Michigan R. R. Co.* 22 id. 258; *Parish* v. *Wheeler*, 22 id. 494; *State Board of Agriculture* v. *Citizens' Street Ry. Co.* 47 Ind. 407.

A corporation retaining a contract of its corporators after the recording of the certificate, is liable on it. *Hughes* v. *Antietam Manf. Co.* 34 Md. 316; *Tonica and C. Ry. Co.* v. *McNeely*, 21 Ill. 71; *Johnson* v. *Ewing Female University*, 35 id. 518.

Mr. C. M. BRAZEE, for the appellee:

Corporations can only act in the manner and for the purposes named in the incorporation articles. Field on Corporations, secs. 246, 247.

The company was not liable for any contract or service made or had prior to its organization, and no recovery can be had on any such contract. *Drainage Co.* v. *Durbin,* 13 Ind. 173; *Rockford and Rock Island R. R. Co.* v. *Sage*, 65 Ill. 328; *Diversy* v. *Smith*, 103 id. 279.

It is soon enough for corporate bodies to enter into contracts incumbering their property when they are duly organized according to their charter, and have their chosen and impartial directors to conduct their business. *N. Y. and N. H. R. R. Co.* v. *Ketchum*, 27 Conn. 170; *Franklin Ins. Co.* v. *Hart*, 31 Md. 59; *Western Screw and Manf. Co.* v. *Cousley*, 72 Ill. 531; *Stowe* v. *Flagg*, id. 397.

There are very great differences between stock and mutual insurance companies, the rule being that no waiver or special contracts can be made with the mutual company, while there may be with stock companies. May on Insurance, secs. 146, 148, 149, 548, 552; *Belleville Mutual Ins. Co.* v. *Van Winkle*, 1 Beasley, (N. J.) 333; *Hackney* v. *Allegheny Mutual Ins. Co.* 4 Barr, (Pa.) 185.

A party becoming insured in a mutual company becomes a member, and is charged with notice of the charter and by-laws, powers of agents, and all acts of the company. *Mitchell* v. *Lycoming Mutual Ins. Co.* 51 Pa. St. 402; May on Insurance, 552.

What is necessary in order to constitute the organization of an incorporation under a general act of the legislature, other than under a special charter? *Bigelow* v. *Gregory,* 73 Ill. 197.

Until all acts necessary for a full and complete organization of the appellant had been done, and the certificate filed for record, the corporators or their solicitors could make no existing contracts of insurance covering a period of time before the organization or legal existence of the appellee. *Dunning* v. *Smith,* 3 Johns. Ch. 332; *Bigelow* v. *Gregory et al.* 75 Ill. 197; *Dart* v. *Herculese,* 57 id. 447.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of July, 1880, a number of persons in Winnebago county determined to organize the Manufacturers and Merchants' Mutual Insurance Company, to insure against loss by fire. They published the notice required by the statute, and filed a declaration of intention with the Auditor, together with a copy of the charter they proposed to adopt. On the 7th day of that month the Attorney General of the State certified to the Auditor that he had examined the notice and charter, and found they conformed to the law. The persons thus engaged designated persons to solicit insurance. Holland and De Forrest, who had been appointed for the purpose, saw appellant, and induced him to agree to take a further insurance on the machinery in his factory. He, at the time, agreed to take insurance in the company for $1000. He gave his note, payable to the company, for $150, and accepted a draft for $30, dated August 10, 1880, by which he agreed, on demand, to pay to the order of E. Lyman,

treasurer of the company, $30, as a twenty per cent assessment on his premium note of $150, for $1000 insurance under policy No. 36, of even date therewith, in the company. The draft was drawn by James Ferguson, as secretary of the company. There were no other writings entered into in reference to the matter, all else being verbal. On the 3d of February, 1881, the promoters of the enterprise applied to the Auditor to examine the notes and securities held by them, and for a certificate of compliance with the law. He made the examination, but finding some of the notes informal he declined to give the certificate. On the 5th of the month the corporators made the oath required by the statute. On the night of that day appellant's factory was burnt, with the machinery. This was on Saturday, and on the next Monday, the 7th of the month, appellant gave notice of the loss, and notified the secretary that he considered the company liable, and obtained permission to save all he could out of the ruins. On the 9th of the month, four days after the fire, the corporators sent a messenger to Springfield to file its list of premium notes with the Auditor, they having obtained such notes in place of those rejected by the Auditor, and they obtained the final certificate from the Auditor, and filed it for record with the clerk in Winnebago county on the 11th day of February, 1881. Thereupon the company wrote on the note, draft and application of appellant, the words, "cancelled February 11, 1881." The company thereupon refused to pay the loss, on the ground that it had made no contract, and was not bound by the acts or agreement of the corporators before the organization was completed. Thereupon appellant brought suit in the Winnebago circuit court, and on a trial he recovered a verdict and judgment for the sum of $1000, and interest. The company appealed to the Appellate Court for the Second District, where the judgment was reversed, but the cause was not remanded, the court holding appellant could not recover, and he appeals to this court and asks a reversal.

Appellant insists that the application, the premium note, and acceptance of the draft by him, and their delivery to and retention by the corporators, constitute a contract of insurance; that he did all he would have been required to do had the company been organized at that time, and as it was intended to be an insurance by all parties, the company, on becoming organized, was precluded from denying that the contract was binding on it; that the incorporators, not only by agreement, but by using the premium note and the draft as an assessment of twenty per cent of its capital furnished to the Auditor, and without which it would not have had the requisite amount of capital to complete its organization, the company is estopped from denying the validity of the contract; that the corporators having used these instruments five days after the fire to procure the Auditor's certificate of incorporation, it could not afterwards cancel them, and thus escape liability to pay the loss; that to do so is unfair and unjust, and contrary to the spirit of the provisions of the sections of the Insurance law, under which the company was organized. The first section of that act authorized the organization of this company for the purposes of insuring such property. The third section authorized the incorporators to file in the office of the Auditor of Public Accounts a declaration, signed by them, declaring their intention to form a company for insuring against loss by fire, etc. The sixth section provides that no mutual company out of Chicago shall commence business until agreements have been entered into for insurance with at least two hundred applicants, the premiums on which shall amount to not less than $100,000, of which $20,000 at least shall have been paid in cash, and notes of solvent parties, founded on actual and *bona fide* applications for insurance, shall have been received for the remainder. Nor shall any such note be represented as capital stock unless a policy be issued upon the same within thirty days after the organization of the company, upon a

42—107 ILL.

risk which shall not be for a shorter period than one year. The balance of the section relates to making assessments, etc.

That a corporation should have a full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business, would seem to be self evident. This is unconditionally true, unless the act of incorporation authorizes the corporators to perform acts and enter into contracts to bind the company when it shall be organized. As well say a child *in ventre sa mere* may enter into a contract, or that its parents may bind it by contract. A corporation, until organized, has no being, franchises or faculties. Nor do those engaged in bringing it into being have any power to bind it by contract, unless so authorized by the charter. Until organized as authorized by the charter there is not a corporation, nor does it possess franchises or faculties for it or others to exercise, until it acquires a complete existence. By its birth, so to speak, it for the first time acquires its faculties to transact its business and perform its functions. Then, do these sections authorize the corporations to issue policies to individuals who apply for insurance, and give their premium notes? They are authorized to take such applications and notes as a fund or capital to authorize the granting of the charter, and to enable the company to transact its business when organized. This is manifestly the true construction, as the statute provides that if a policy of insurance running at least twelve months is not issued in thirty days after the organization of the company, the premium note shall not represent a portion of the capital stock of the company. If it was intended that the application for the policy and the giving of the premium note should constitute a contract to insure, such a provision would not have been enacted; but by its adoption it is manifest that the General Assembly intended that the application and note should be held simply to be acted upon after the organization should be completed. If such was the purpose,

and of it we have no doubt, then there can be no claim that there was a contract of insurance, but simply that if the property was still in existence when the company should be organized, the applicant would be entitled to a policy on the terms proposed. It was simply a proposition or an application for a policy after the organization should be had, and the company authorized to take risks and issue policies. Beyond that the incorporators had no power to bind the future company. Nor does the statute authorize the corporators to contract for and issue policies. Had they issued a policy in form, would any one claim that a suit could be maintained on it against the company? Surely not, because no power to do so is conferred by the statute. And if a formal written policy would be invalid, how can it be said that a mere verbal agreement for insurance can be held binding?

In the case of *Rockford, Rock Island and St. Louis R. R. Co.* v. *Sage*, 65 Ill. 328, it was held that a railroad incorporation was not liable for services rendered before its organization, unless the company promised to pay after it was organized. In *Stowe* v. *Flagg*, 72 Ill. 397, it was held that the agreement of parties intending to and engaged in forming a manufacturing corporation to put in property as stock, but which was never subscribed, did not bind the corporation, nor did the property become that of the corporation, although it was used by the company. In the case of *Western Screw and Manufacturing Co.* v. *Cousley*, 72 Ill. 531, it was held where the corporators, before the organization of the company was completed, employed a superintendent, and he entered upon the duties of the place, and rendered services for the inchoate company, it, when organized, was not liable to pay for such services.

This statute only authorizes the company to transact business upon filing the certificate of the Auditor of Public Accounts with the proper county clerk. The transaction of business in the name of the corporation before that certifi-

cate shall be thus filed is unauthorized. But in this case no policy was issued, or intended to be issued, when the application and note were executed, and the case falls within the principles announced in the cases above referred to, and they are conclusive of the question.

We perceive no error in the record, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*