# M. M. BLAKE

## *v.*

## THE PEOPLE, for use of A. Caldwell.

*Filed at Springfield March 26, 1884.*

1. STATUTE—*as embracing more than one subject—liberal construction.* The prohibition in section 13, article 4, of the constitution of 1870, that no act thereafter passed shall embrace more than one subject, is the same as that in the constitution of 1848 in respect to private or local legislation, and it has uniformly been construed liberally in favor of the validity of enactments. The fact that many things of a diverse nature are authorized or required to be done, is unimportant, provided the doing of· them may fairly be regarded as in furtherance of the ·general subject of the enactment.

2. CURATIVE LEGISLATION—*how far allowable.* If an act omitted to be done, creating a defect in a proceeding, be such that the legislature might have dispensed with its performance by a prior statute, then a subsequent statute dispensing with it retrospectively must be held valid, especially when the proceeding is not complete before the defect is so cured.

3. DRAINAGE LAW—*validity of act of 1879, as embracing but one subject.* The act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879, is not liable to the constitutional objection that it embraces more than one subject. The subject of the enactment was the protection of land against surplus water,— or, in other words, directing the flow of water for the protection of lands; and this is equally accomplished by drains and ditches, or by levees. The fact that the title to the act unnecessarily specifies the motives or purposes in aid of which it is enacted, and to some extent the means by which the flow of water is to be directed, is not objectionable. At most it is but unnecessary particularity.

4. SAME—*of the amendatory act of 1883, in the same regard.* The act of May 24, 1883, being an act to amend the Drainage law of 1879, is not subject to the objection that it contains more than one subject. Its object is the same as that of the act of 1879,—the protection of lands against surplus water,—and but supplements omitted détails essential to the efficacy of that act.

5. SAME—*power under constitution—as to the mode of creating drainage districts—and the agencies to be employed and conditions prescribed in respect thereto.* The words in the amendment to section 31, article 4, of the constitution, "provide for the organization of drainage districts," etc.,

are to be referred to the General Assembly, and not to the owners of lands,—in other words, the General Assembly may "provide for the organization of drainage districts, and vest the corporate authorities thereof with power," etc.; and there is not any limitation or restriction upon the legislature as to the agencies to be used in the creation of such corporations, and it may make the finding of certain facts by the county court authorize the formation of such a district and corporation.

6. A statute requiring a petition for the formation of a drainage district to be presented to the county court, on notice, and the finding of certain prerequisite facts necessary to its creation as a corporation, is not invalid. It is the statute itself which brings into being such corporation, and not the court. In such case the statute becomes operative when the prescribed facts are found, and the finding is entered of record.

7. SAME—*of facts preliminary to organization—finding conclusive in collateral proceeding—remedy to question authority of commissioners.* Where the county court has found, by its judgment entered of record, that the requisite petitions had been presented to it for the formation of a drainage district, upon proper notice, and shows the appointment of commissioners, under section 5 of the Drainage act, after the finding of the necessary facts, and the confirmation of the report of the commissioners after due notice of the time of hearing the same, such commissioners, even though proper notices were not given, will become a corporation *de facto,* and its existence can not be questioned collaterally, as in an attempt to defeat an application for judgment upon unpaid special assessments made by the corporate authorities; and their authority to act can only be questioned by *quo warranto.*

8. SAME—*special assessments—of the notice of time and place to hear objections.* Under section 19 of the Drainage act, the jury, after the completion of their assessment, shall fix a time and place when and where they will meet for the correction of the assessment, and they or the commissioners are required to give at least ten days' notice of such time, and place, and the object of such meeting, by posting and publishing notices, as required in section 3 of the same act, prior to the time so fixed; and section 3 requires the posting of notices in at least five of the most public places in the district, and the publishing a copy thereof in some newspaper or newspapers published in each county from which any part of the district has been formed. The time of the notice to be given being fixed by section 19, must control.

9. SAME—*waiver of objections to assessment, if not made before confirmation.* All objections which might have been made at the time of the confirmation of the assessment roll, and which were not then urged, are waived, and can not be urged for the first time on application for an order for the sale of lands for a delinquent assessment. In this respect there is no difference between cases of special assessments for the opening, repairing, etc., of streets, and assessments under the drainage acts.

10. SAME—*power as to works constructed under prior invalid act.* The fact that the act of April 24, 1871, was held unconstitutional, in part, as to the power to construct levees, does not render a levee constructed by them under that act, one not constructed under any law of this State. The objection, if valid, should have been made before the confirmation of the assessment roll. But because the act of 1871 was repugnant in some of its provisions to the constitution, before its amendment in 1878, as in favor of particular rights, it does not follow it was no law for any purpose. That act was valid as to all persons except those not assenting to the formation of the district, and those against whose property it was proposed to assess the costs.

11. The amendment to section 31, article 4, of the constitution, adopted in 1878, giving power to provide for the organization of drainage districts, and to vest the corporate authorities thereof with power, not only to construct levees, but also to keep in repair all levees before constructed under the laws of the State, by special assessments, etc., refers to and embraces levees constructed under the act of 1871, as none others could have been intended.

12. SAME—*transfer of assessment on tax-books—where to be placed.* It is no objection to the collection of an assessment under the Drainage act of 1879, made for keeping a levee in repair, that the county collector, on the return of the list to him, shall transfer the amount of such assessment to a separate column in his tax-books. The statute does not so require, but it is simply that it shall be transferred to a proper column opposite the land upon which it has been made.

13. TAXES—*what is included in the term.* The word "tax," or "taxes," in the Revenue law, is defined by that law to mean any tax, special assessment, or costs, interest or penalty.

APPEAL from the County Court of Pike county; the Hon. EDWARD DOOCEY, Judge, presiding.

Mr. WM. A. GRIMSHAW, and Messrs. ORR & CRAWFORD, for the appellant:

As to when retrospective legislation is operative and binding, counsel cited *Town of Fox* v. *Town of Kendall,* 97 Ill. 72; 7 Wait's Actions and Defences, 566, 569; *Gillinwater* v. *Mississippi R. R. Co.* 13 id. 1; *Leak* vi *Richman County,* 64 N. C. 132; *The People ex rel.* v. *Peacock,* 98 Ill. 172; *United States Mortgage Co.* v. *Gross et al.* 93 id. 484; *The People ex rel.* v. *McCrea,* 95 id. 109.

*Ex post facto* laws are not favored. *Garrett* v. *Higgins,* 1 Scam. 335; *Bruce* v. *Schuyler,* 4 Gilm. 221; *Parmalee* v. *Lawrence,* 44 Ill. 405; *Hunter* v. *Hatch,* 45 id. 175; *Billings* v. *Riggs,* 56 id. 483; *Hosmer* v. *The People,* 96 id. 58.

The Drainage act of 1879 embraces more than one subject. Drains and ditches constitute a different subject from that of a levee. *Updike* v. *Wright,* 81 Ill. 49; Const. of 1870, art. 4, sec. 13.

Messrs. MATTHEWS, WIKE & HIGBEE, for the appellees, among numerous other questions discussed the following:

The Drainage act is valid, under the constitutional amendment of 1878 to section 31, article 4. *Moore* v. *People,* 106 Ill. 382. Curative legislation is allowable. *Mitchell* v. *Deeds,* 49 id. 416; Cooley's Const. Lim. sec. 374; *Cowgill* v. *Long,* 15 Ill. 202. Retrospective laws. *Satterlee* v. *Matthewson,* 2 Pet. 380; *Watson* v. *Mercer,* 8 id. 88. Confirmation of assessment as *res judicata. Andrews* v. *People ex rel.* 84 Ill. 28; *People ex rel.* v. *Brislin,* 80 id. 423; *Lehmer* v. *People ex rel.* id. 601.

"Tax" and "assessment," as used in the statute, are synonymous. *Webster* v. *People,* 98 Ill. 343; *People* v. *Springer,* 106 id. 544; Revenue act, sec. 292.

Messrs. IRWIN & DOBBINS, also, for the appellees:

That the confirmation of the assessment is conclusive, see *Schertz* v. *The People,* 105 Ill. 32; *The People* v. *Brislin,* 80 id. 423.

Requiring the county court to find certain facts preliminary to the formation of a drainage district, does not render the act unconstitutional. *The People* v. *Morgan,* 90 Ill. 558.

The notice given under section 3 of the act was sufficient. *Madden* v. *Cooper,* 47 Ill. 359; *Garrett* v. *Moss,* 20 id. 553; *Ricketts* v. *Village of Hyde Park,* 85 id. 110; *Pearson* v. *Bradley,* 48 id. 250; *Gilmore* v. *Sapp,* 100 id. 301.

In all cases where service is to be made by publication, if the record recites that due notice has been given, the finding is conclusive. *Donlin* v. *Hettinger*, 57 Ill. 348; *Osgood* v. *Blackmore*, 59 id. 261; *Bennett* v. *Wolf*, 70 id. 76.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal brings before us for review the record of a judgment of the county court of Pike county, in favor of the collector of that county, against a certain tract of land of the appellant, for the amount of a special assessment of the "Sny Island Levee Drainage District." That district is claimed to be incorporated under and by virtue of the provisions of an act of the General Assembly, entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879. The act provides for the formation of drainage districts, and invests the districts, when formed, with power to construct drains, ditches and levees, for agricultural, sanitary or mining purposes, and also to maintain and keep in repair any such drain, ditch or levee heretofore constructed under any of the laws of this State. Appellant contends that the act is unconstitutional and void, and that therefore no valid corporation can be created under it, and this must, of course, be passed upon before the consideration of other questions arising in the case, which presuppose the validity of the act. The contention is, that the act is in contravention of the constitution in two respects: First, in that it embraces more than *one subject*, and is therefore within the prohibition of section 13, article 4; and second, in that it authorizes the *county court*, and not the *owners of lands*, to create the corporation, and is not, therefore, within the letter or the spirit of the amendment to section 31, article 4, adopted by

the people at the November election in 1878, apart from which amendment the General Assembly possessed no power to authorize the creation of such corporation.

The same prohibition as that contained in section 13, article 4, but limited to private or local legislation, was in the constitution of 1848, and it was uniformly construed liberally in favor of the validity of enactments. The fact that many things of a diverse nature are authorized or required to be done, is unimportant, provided the doing of them may fairly be regarded as in furtherance of the general subject of the enactment. *Belleville R. R. Co.* v. *Gregory*, 15 Ill. 20; *Firemen's Benevolent Association* v. *Lounsbury*, 21 id. 511; *Board of Supervisors* v. *The People*, 25 id. 181; *O'Leary* v. *County of Cook*, 28 id. 534; *Neifing* v. *Pontiac*, 56 id. 172; *Prescott* v. *Chicago*, 60 id. 121; *The People* v. *Brislin*, 80 id. 423; *Johnson* v. *The People*, 83 id. 431; *The People* v. *Loewenthal*, 93 id. 191; *Town of Abington* v. *Cabeen*, 106 id. 200; *Potwin* v. *Johnson*, 108 id. 70; *City of Virden* v. *Allan*, 107 id. 505.

The subject of this enactment was the protection of land against surplus water,—or, in other words, directing the flow of water for the protection of lands; and this is equally accomplished by drains and ditches, or by levees, the levee directing the flow of the water that would otherwise come upon the land, away from it, and the drains and ditches directing the flow of water off the land. The motives in directing the flow of the water, of course, do not change the definition of the act of so doing, and must, therefore, be unimportant. We are clearly of opinion that the objection is untenable. The title to the act unnecessarily specifies the motives or purposes in aid of which it is enacted, and, to some extent, the means by which the flow of water is to be directed, but this is not objectionable. It discloses, though with more words than are absolutely necessary, very clearly, that the *subject* of the act is that we have indicated. At

most, it is but unnecessary particularity. *Updike* v. *Wright*, 81 Ill. 49, has no bearing on the present question. What was there said in regard to levees and drains, etc., was in reference to a construction of the peculiar language of the statute then before the court, which did not present the question of whether levees and drains may be reasonably regarded as included within one general subject.

The amendment to section 31, article 4, of the constitution, adopted at the November election, 1878, reads as follows: "The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees, for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessment upon the property benefited thereby." Very clearly, according to the familiar rules of construing language, the nominative to the verb "provide," is "the General Assembly," and not "the owners of lands." The General Assembly may provide for the organization of drainage districts, and vest the corporate authorities thereof with power, etc. It would be absurd to say the owners of lands could vest the corporate authorities with power, especially over the lands of others not uniting in creating the corporation, which is indispensable to the effectiveness of the contemplated corporation.

We are unable to discover, here, any limitation or restriction upon the General Assembly as to the agencies to be used in the creation of the corporation. Surely there can be no reason why the county court may not be invested with power to inquire into and find the existence of certain preliminary facts deemed important as prerequisites to the corporation. This is not unusual, but in all like cases, where the facts deemed necessary to be found are of a nature that the Gen-

eral Assembly can not conveniently investigate them, the practice has been to refer their determination to some local tribunal. (*The People* v. *Reynolds*, 5 Gilm. 1; *The People ex rel.* v. *Salomon*, 51 Ill. 37.) The latter case was identical in principle in this respect with the present case. It is the statute that creates the corporation,—not the county court; but the statute only becomes operative when the prescribed facts are found, and the finding is entered of record by the county court, as directed by the act. The questions of fact referred to the county court are such as a court is peculiarly competent to pass upon, and we are of opinion the objection is destitute of merit. In another respect the constitutionality of this act was questioned by counsel in *Moore* v. *The People ex rel.* 106 Ill. 376, and we there held it free of constitutional objection. We now again hold, after considering the present objections, that it is a valid constitutional enactment.

Assuming, then, the act to be valid, we come to the next objection urged against the judgment below by counsel for appellant, which is, that no legal corporation has been created here, because the terms of the act have not been complied with in the several steps required to be taken for the purpose of creating such corporation. Counsel particularly specify and object that the notice required of the presentation of the petition to the county court for the formation of the district was not given, and also that the notice required to be given upon the filing of the report of the commissioners for confirmation was not given, and hence that the court never obtained jurisdiction to enter the several orders which were entered, and which were indispensable to the creation of the corporation.

The 1st section of the statute authorizes the formation of drainage districts. The 2d section requires, for that purpose, the filing of a petition in the county court, and prescribes what it shall contain. The 3d section provides how notice shall be given, and for what length of time. The 4th section

authorizes the court to hear the petition at any probate term, and to determine all matters pertaining thereto under that act, and to adjourn the hearing from time to time, etc. The 5th section authorizes all persons through or upon whose land any of the proposed work may be constructed, or whose land may be damaged or benefited thereby, to appear and contest, etc.; directs what facts shall be inquired into and what evidence in reference thereto shall be admissible, etc., and concludes thus: "If the court, after hearing any and all competent evidence that may be offered before it, for and against the said petition, shall find that the same has not been signed by a majority of the land owners, as hereinbefore required, the said petition shall be dismissed at the cost of the petitioners; but if the court shall find that the petition has been signed by land owners constituting such majority, the court shall so find, and such finding shall be conclusive upon the land owners of such district that they have assented to and accepted the provisions of this act; and if it shall further appear to the court that the proposed drain or drains, ditch or ditches, levee or other works, is or are necessary, or will be useful, for the drainage of the lands proposed to be drained thereby, for agricultural, sanitary or mining purposes, the court shall so find, and appoint three disinterested persons as commissioners, to lay out and construct such proposed work." The 6th section prescribes the oath which such commissioners shall take before entering upon the duties of their office. The 7th section requires that they shall elect one of their number chairman, and authorizes them to elect another as secretary. The 8th section provides that a majority of the commissioners shall constitute a quorum, and that its concurrence shall be sufficient to decide any matter pertaining to their duties. The 9th section prescribes the duties of the commissioners, and requires them to report, as to certain matters, in writing, to the court. The 10th section directs that "if the commissioners shall find that such costs,

expenses and damages are more than equal to the benefits there will be bestowed upon the land to be benefited, they shall so report, and the proceeding shall be dismissed at the cost of the petitioners." The 11th section authorizes the commissioners to have surveys, plans and specifications made, etc., which are to be reported to the court. The 12th section gives the commissioners authority to deviate from the route or terminus of the drains, as specified in the petition. The 13th section requires the clerk of the county court, upon the report of the commissioners being filed, to cause notice to be given of the day upon which application will be made for the confirmation of the report, and prescribes the length of time; and it also authorizes all persons interested to appear at that time and contest the confirmation of the report, or show that it ought to be modified, and to introduce evidence, etc. The 14th section provides that if, upon the hearing, the court shall be of opinion that the objections are not well taken, or if no objections shall be made, order of confirmation shall be entered. If it shall appear that the same ought to be modified, the court shall modify it to conform to the equities in the premises, or if not sufficiently informed, the court shall order the commissioners to revise and correct their report, etc. The 15th section authorizes the court, in case the report be referred back to the commissioners for amendment, to fix a day when the commissioners shall again present their report, or to adjourn it to the next term of court, and in either case the hearing shall stand adjourned to the time designated. The 16th section provides: "If, after the hearing of all objections, if any, to the report of the commissioners, the court shall be satisfied that the said report should be approved, the court shall cause an order of confirmation of the same to be entered," and then sets out the form thereof.

The petition here, it may be assumed, because it is not objected to, sufficiently conforms to the requirement of sec-

tion 2; but there are certain notices and certificates of publication found among the files, which, counsel for appellant contend, do not show such notice of the filing of the petition as is required by section 3. The petition was filed on the 26th of January, 1880, and the notices on file are to the effect that it would be presented to the county court at its February term, which, as we understand from the argument of counsel, would begin on the 16th of February, 1880. The record shows that the petition was presented to the county court on the 23d of February, 1880, and the order of court then entered of record specifically finds that due notice of the filing of the petition had been given, reciting in what manner, and then proceeds: "And the court having heard the evidence introduced in support of said petition, and being now fully advised in the premises, doth find that the petition herein is signed by a majority of the owners of lands within the proposed district who are of lawful age, and who represent one-third in area of the lands proposed to be benefited by the proposed work." It then finds and recites the object and prayer of the petition, and thereafter proceeds: "It is therefore ordered that Alfred Stebbins and Rufus M. Murray, of said county of Pike, and John O. Bernard, of said county of Adams, three disinterested persons, be and they are hereby appointed commissioners to lay out and construct said proposed work." It then directs they shall take the oath prescribed, after which they shall examine the lands in the petition proposed to be protected and drained, and the lands over which the levee proposed to be repaired and maintained passes, and determine and report the matters prescribed by section 9. The record shows that the commissioners thus appointed, before entering upon the duties of their office, took and subscribed the oath prescribed by section 6. The record further shows that they made their report, as directed by sections 9, 10, 11 and 12, to the May term, A. D. 1880, of the county court, which was filed on the 28th of April. The

clerk of the county court caused notice to be given of the filing of this report, and of the day upon which application would be made for the confirmation thereof; but counsel for appellant contend that certain notices, certificates, etc., found among the files, show that the notice was not given in the manner and for the length of time prescribed by the 13th section. At the May term, A. D. 1880, of the court, the following order of the court, being in literal conformity with the order prescribed in section 16, was entered of record, omitting the caption:

"This day the report of Rufus M. Murray, Alfred Stebbins and John O. Bernard, commissioners heretofore appointed by this court to examine the lands of the petitioners for the purposes specified in the petition filed in this cause, having been filed, and it appearing to the court that due notice has been given to all persons interested, for the length of time and in the manner required by law, of the application to this court for the confirmation of said report, and the court having duly examined said report, and considered all objections to the same, it is ordered by the court that the report of said commissioners be and the same is hereby confirmed. And the court further finds that the work proposed in said petition to be done will be useful, for agricultural and sanitary purposes, to the owners of land in said proposed district. And the court also finds that the persons who have signed said petition are of lawful age, and are a majority of the land owners, and who represent one-third in area of the land to be affected by such proposed work. And the court further finds that said drainage district is duly established, as provided by law."

Section 16 further provides, after prescribing this form of judgment, as follows: "And upon entering such order of record, said district is hereby declared by law to be organized as a drainage district, by the name mentioned in said petition, and with the boundaries fixed by the order confirming the report of the said commissioners. And said district is

hereby declared to be a body politic and corporate, by the name mentioned in said petition, as aforesaid, with the right to sue and be sued, to adopt and use a corporate seal, and to have perpetual succession; and the commissioners appointed as aforesaid, and their successors in office, shall, from the entry of such order of confirmation, constitute the corporate authorities of such drainage district, and shall exercise the functions conferred upon them by law." At least, therefore, there was, then, here, after the entering of this order, a corporation *de facto.* An attempt was made to follow each step prescribed by the statute, and every corporate agency provided for is professedly brought into existence. Moreover, the record shows that soon after the appointment of these commissioners they organized a board, by electing one of their number as chairman and another as secretary, as provided by the 7th section; that they commenced the repair of the levee in 1880; that they collected and expended in so doing, up to 1883, some $80,000, and contracted debts, most of which are due, to the amount of $10,000, etc., during which time it does not appear that any legal attempt was made to prevent their action as a corporation. Under repeated decisions of this court, it is clearly not now admissible, in this form of action, to question the existence of this corporation, and the authority of these commissioners to act in that capacity. There being an acting *de facto* corporation, its existence, and the authority of its acting officers, can only be questioned by a proceeding by *quo warranto.* *Marsh* v. *Astoria Lodge,* 27 Ill. 421; *President and Trustees* v. *Thompson,* 20 id. 197; *Coles County* v. *Allison,* 23 id. 437; *Tisdale* v. *President and Trustees of Minonk,* 46 id. 9; *Kettering* v. *Jacksonville,* 50 id. 39; *Mitchell et al.* v. *Deeds,* 49 id. 416; *Town of Geneva* v. *Cole,* 61 id. 397; *Lawson et al.* v. *Kolbenson et al.* id. 405; *Trumbo* v. *The People,* 75 id. 562; *The People* v. *Newberry's Estate,* 87 id. 41; *Alderman* v. *School Directors,* 91 id. 179; *Osborn* v. *The People,* 103 id. 224.

In *Trumbo* v. *The People*, we held that notwithstanding the fact that a school district had been formed in violation of a statutory requirement, the legality of the district could not be questioned in a collateral proceeding, and that the only mode of questioning it is by information in the nature of a *quo warranto*. That case was analogous to this, in that there the proceeding was to collect a tax, and here it is to collect a special assessment; and it is therein shown that the case is not analogous to *Stowe* v. *Flagg*, 72 Ill. 397, and *Bigelow* v. *Gregory*, 73 id. 197, where it was held that in suits against individuals, who set up in defence of their individual liability that they had formed themselves into a corporation, and hence their liability, if any, was a corporate one, such defence might be resisted by showing that the pretended corporation had not been legally formed, because of a non-compliance with a statutory prerequisite to the formation of the corporation. *Trumbo* v. *The People* was approved and followed in *The People ex rel.* v. *Newberry's Estate*, where, also, to a proceeding for the collection of a school tax, it was attempted to interpose the defence that there was no such school district as that by and in behalf of which it was purported the tax was levied, and it was held it was sufficient there was a corporation *de facto*,—that the legality of its organization could only be inquired into upon *quo warranto*.

In *Osborn* v. *The People*, the corporation was created for drainage purposes under this identical law, and the proceeding, as here, was for the collection of a special assessment. There it was proposed, in defence, to show that a number of the petitioners were not in fact owners of land, as required by section 2 of the statute, and rejecting such, there were not the requisite number of petitioners to give the court jurisdiction. The question was precisely analogous to that raised here, for the requisite number of petitioners was as indispensable as the notice to those not petitioners, to give the court jurisdiction over the persons of those to be affected. It was held, as

an alternative view of the question, that the validity of the corporation could not be thus questioned,—that it could only be questioned upon *quo warranto.*

This, then, leaves us only to inquire into the objections urged to the proceedings subsequent to the creation of the corporation.

Section 16 further provides, that after the creation of the corporation a jury shall be impaneled to assess damages and benefits, and directs the mode of summoning them, etc. The 17th section directs that the jury so impaneled shall proceed to examine the lands to be affected by the proposed work, and ascertain the damages and benefits to the lands, and shall make out an assessment roll, in which shall be set down, in proper columns, the names of the owners, when known, a description of the lands, the number of acres in each tract, if damages allowed, the amount of the same, and if benefits are assessed, the amount, and in case of both benefits and damages, the balance to be carried forward to separate columns for damages or benefits, as the case may be. The 18th section directs the manner of assessment, and in what proportion it shall be made against each part. The 19th section provides, that "when the jury shall have completed their assessment  *  *  *  they shall fix a time and place when and where they will attend  *  *  *  for the correction of the assessment, and the commissioners or the jury shall give at least ten days' notice of such time, and place, and object of such meeting, by posting and publishing notices, as required in section 3 of this chapter, prior to the time so fixed, and that the affidavit of any creditable person that he has posted said notices, and the certificate of the purchaser that the publication has been made, shall be sufficient evidence of such facts." Section 20 requires that the jury shall, at the appointed time, appear and hear all objections, "and shall make such corrections as shall seem just, and shall adjust such assessment so as to make the same just and

equitable." Section 21 provides for compelling the attendance of witnesses, keeping order, etc., at the hearing. Section 22 requires that the jury, when the assessment has been so corrected, or found correct, upon hearing, shall confirm the same, and that it shall be certified by the foreman of the jury, and delivered to the commissioners, who shall return it to the court within ten days from such confirmation, and the same shall stand for hearing at the next term thereof, if filed ten days before the term. Sections 23 and 24 provide for appeals, and direct the manner of their trial. Section 25 directs that when the assessment roll has been corrected, as aforesaid, the court shall confirm it, and cause it to be spread upon the records, and that appeals and writs of error shall be allowed thereupon, as in cases of appeals from and writs of error to the county court in proceedings for the sale of lands for taxes or special assessments.

No objection is taken to the sufficiency of this record with reference to the impaneling of the jury, as provided by the 16th section, nor to their proceedings pursuant to the 17th and 18th sections; nor is any question raised as to the proceedings under any other section, to and including the 25th section, except the 19th. But it is objected that the notices required by that section were not given, and upon this point counsel insist the record should show notices by publication, at least once a week, for three successive weeks, in some newspaper published in each county. We can not concur in this construction of the section. Section 19 expressly prescribes the *time* of publication, and that subject is not at all affected by section 3. It says, "the commissioners or the jury shall give at least ten days' notice of such time, and place, and object of such meeting." That idea is specifically and unequivocally expressed, and can, as we think, admit of no rational doubt. The next thing, then, is to ascertain how the notice shall be given, the time for which being fixed. The section answers, "by posting and publishing notices, as

required in section 3 of this chapter, prior to the time so fixed,"—that is, a time at least ten days in advance of the giving of the notice. How, then, does section 3 require notices to be posted and published? That section answers, "posting notices in at least five of the most public places in said proposed district in which said work is to be done, and also by publishing a copy thereof in some newspaper or newspapers published in each county from which any part of said district is proposed to be formed." The *time* of the notice being given by section 19, is, of course, to be stricken out of the language of section 3, when construing them together, to ascertain *how* the publication is to be made. The record shows the posting of notices, and the publication of notices for more than ten days, and it is therefore sufficient.

All objections which could have been urged at the time of the confirmation of the assessment roll, and which were not then urged, must be considered as waived, and can not be urged for the first time on application for sale of lands for a delinquent assessment. Such has been the repeated ruling of this court in cases of special assessments for the opening, repair and improvement of streets, and there is no difference in principle between those cases and the present. *The People* v. *Brislin,* 80 Ill. 423; *Andrews* v. *The People,* 84 id. 28; *Lehmer* v. *The People ex rel.* 80 id. 601; *Prout* v. *The People,* 83 id. 154; *Chicago and Northwestern Ry. Co.* v. *The People,* id. 467; *Gage* v. *Parker,* 103 id. 528.

The point is made that the 2d section only authorizes the corporations to be created pursuant thereto,—first, to construct drains, ditches and levees; and second, to maintain and keep in repair any such drains, ditches and levees heretofore constructed under any law of this State,—whereas this corporation does not profess to be created under the first head, but simply for the purpose of maintaining and keeping in repair what is known as the "Sny Island levee,"—a levee claimed to have been made by a corporation purporting to

be created under and by virtue of "An act to provide for the
construction and protection of drains, ditches and levees,"
approved April 24, 1871, as to which corporation this court
held in *Webster* v. *Levee Commissioners*, (unreported,) following
*Updike* v. *Wright*, 81 id. 49, that the construction of a levee
along the river, as an independent work, was not authorized
by the constitution then in force, or said act of April 24,
1871, and that so much of that act as purported to vest
drainage commissioners with power to levy and collect taxes
for the construction of drains, levees, etc., was repugnant to
the constitution, and inoperative.

It would, perhaps, be a sufficient answer to this to say that
we can not take judicial notice that the purpose for which
the corporation was created was not, in the language of the
2d section, "to keep in repair drains, ditches and levees here-
tofore constructed under any law of this State," and whether,
in fact, it was or was not, was a question to be raised and
determined by proof on the confirmation of the assessment
roll, and which, consequently, now comes too late. But
assuming the question to be properly before us, it must be
decided against appellant. It is not accurate to say, merely
because a law is repugnant to some provision of the constitu-
tion as in favor of particular rights, it is no law for any pur-
pose. The respects wherein the act of April 24, 1871, was
condemned as being unconstitutional, were only as affecting
those over whose lands the drains, levees, etc., were proposed
to be constructed without the owners' consent, and those
against whose property it was proposed to assess the costs of
constructing such drains or levees without their consent. As
to all other persons, and for all other purposes, the act was
valid law. As to those who were seeking to construct the
drain, levee, etc., and who were promoters of the corporation,
and to those who otherwise relinquished all right to inter-
pose these objections to the validity of the law,—as, for in-
stance, those who gave the right of way for the drains and

levees, and who voluntarily paid their special assessments,—the law was not void.  Cooley's Const. Lim. (1st ed.) 181; *Baker* v. *Braman*, 6 Hill, 47; *Embury* v. *Conner*, 3 N. Y. (3 Comst.) 511.  And precisely the same must be true as to whether the construction of the levee was in excess of the authority conferred by the statute.  As to those who did not, in some proper way, give their consent thereto, and whose property was proposed to be taken or damaged thereby, or to be charged with the expense thereof, the act of building the levee was not "under any law of this State;" but as to those who built the levee upon their own land, or who voluntarily consented that others might build it there, and to those who voluntarily built it, and who voluntarily paid their assessments for that purpose, it was "under the law of this State." Except as against owners of land resisting the appropriation of their property to public use, or the damaging of it for that purpose, or resisting the enforcement of special assessments for the payment of the expenses of the construction of such levee, the "Sny levee" was at all times entitled to the protection of law,—and even as to those, their remedy was not to disregard all legal rights therein of others, but to enforce their own legal rights through the aid of courts.

We are, therefore, of opinion that so far as the levee was constructed and remained at the date of the filing of this petition, it may fairly be regarded as falling within the meaning of the term, "under any law of this State."  This is, moreover, strengthened by the history of the constitutional amendment, of which we may take judicial notice.  There was no law in force authorizing the construction of levees over the lands of others (save the act of April 24, 1871,) at the time *Updike* v. *Wright*, and *Webster* v. *Levee Commissioners, supra,* were decided.  To obviate the effect of those decisions,—allow the construction of levees, as well as drains, upon the lands of others,—and to authorize the formation of municipal corporations for the purpose of constructing drains

and levees, the amendment to section 31, article 4, was submitted to, and adopted by, the people, at the November election, in 1878. The act of May 29, 1879, but repeats, in this respect, the language of that amendment. The levees, therefore, which must have been referred to, because none other could reasonably have been intended, were the levees which had been constructed, but could not be kept in repair because of the decisions in *Updike* v. *Wright,* and *Webster* v. *Levee Commissioners.*

The 26th section provides, that at the time of confirming said report the court may order the assessment of benefits to be paid in installments of such amounts as will be most convenient for the accomplishment of the proposed work; and it also contains this further provision: "But in cases where a levee or ditch has been heretofore built under any law of this State, * * * the annual assessment for keeping the same in repair shall be due and payable on the 1st day of September, annually, and shall be a lien on the lands from confirmation of the assessment. * * * The court shall require the commissioners to report the condition of the work, at its July term of each year, with certain estimates for the ensuing year; and if the court shall find a less amount than the whole of the annual assessment for that year will do to accomplish the work and pay the expenses, then it shall, by order, fix the amount to be paid for that year, and only that amount shall be collected, and the excess shall be remitted." There is no objection urged that this section has not, in the present instance, been complied with. But section 27 directs that immediately after the entry of such confirmation by the court, the clerk shall make out and certify to the commissioners a copy of such assessment roll, and shall so make out and deliver to the commissioners separate copies of the same, pertaining to the lands situated in the different counties, which shall be recorded in the recorder's office of the respective counties in which the lands are situ-

ated, and shall be notice of the lien thereof to all persons. Section 33 provides, that "the commissioners, upon receiving such certified copy of such assessment roll, shall immediately cause a notice to be published for three weeks, in the manner required in section 3," and then gives a form of the notice. And section 34 then proceeds: "If the assessment due upon said lands shall not be paid on or before the day named in the notice given, as in section 35 of this act, it shall be the duty of said commissioners, if they have not appointed a collector, as aforesaid, and if so, then of said collector, to make out a certified list of such delinquent lands upon which the assessments remain unpaid; and the same shall be by him or them, on or before the 10th day of March next after the same have become payable, returned to the county collector of the county or counties in which such lands shall lie, and when the same shall lie in different counties, a separate return shall be made for each county of the delinquent lands therein; and it shall be the duty of the collector to whom any such return has been made, to transfer the amounts thereof from such returns to the tax-books in his hands, setting down therein opposite the respective tracts or lots, in proper columns prepared for that purpose, the amount assessed against each lot,—and the like proceeding shall be had, and with the like force and effect, in the collection of such delinquent assessments, and the sale of said lands for non-payment thereof, as in ordinary collections of State and county taxes by county collectors, and of sales of real estate by them for such non-payment, and of redemption from such sales."

It is shown by the record that on the 10th day of March, 1882, there appeared to be due from appellant the second and third installments of the assessments made to repair the old levee in 1880, as shown by the return of the drainage collector to the county collector, with a small amount of accrued interest. These amounts were transferred by the

county collector to the tax-books in his hands, and he set down opposite the respective tracts or lots the amount assessed against each tract or lot; but the objection is urged by appellant that this was not done in a separate column, and that the extension is therefore void. The requirement of section 34, it will have been observed, is not that the amounts shall be transferred to a *separate*, but it is simply that it shall be transferred to a *proper* column. The requirement in section 162, chapter 121, of the Revised Statutes of 1874, that "a column in the tax-book shall designate the amount of road tax," was less equivocal,—indeed, was emphatic; and yet we held in *Thatcher* v. *The People ex rel.* 79 Ill. 605, that the non-observance of this requirement did not affect the validity of the tax.

Counsel, however, insist that this construction was by virtue of the sweeping provisions of section 281 of the general Revenue law, (Rev. Stat. 1874, p. 904,) and, perhaps, other provisions of like character, which they insist apply to taxes for State purposes only, and have no application to special assessments. This position is not tenable. Section 292 of the same statute, (page 907,) defines the words "tax," and "taxes," as used in that statute, to mean "any tax, special assessment, or costs, interest or penalty imposed upon property." And so we held in *Webster* v. *The People ex rel.* 98 Ill. 343, that section 88 of the Practice act, as amended by the act of 1879, giving an appeal to this court instead of to the Appellate Court, "in all cases relating to the revenue," etc., is intended to embrace public revenue, whether State or municipal, and all taxes and assessments imposed by public authority,—and this was reiterated and followed in *The People ex rel.* v. *Springer*, 106 id. 542. Our statutes and decisions furnish no support to the position assumed by counsel in this respect.

The point attempted to be made in appellant's argument, that a discontinuance of the petition and proceedings there-

under took place at the March term, 1880, is answered by an amended record filed by our leave, since the cause has been pending, showing that the case was on docket, and was continued by order of court at that term.

This opinion might, without impropriety, terminate here; but counsel have argued the constitutionality of the act of May 24, 1883, entitled "An act to legalize drainage districts organized in pursuance of the act hereinafter mentioned, and to legalize the assessments of benefits in such districts, and certain sales made in pursuance thereof, and to authorize districts to purchase lands at certain sales for delinquent special assessments;" and in view of the public interest in the question, we deem it advisable to pass upon it so far as it may affect questions of a like character with those we have been considering. The act referred to in the title is the act of May 29, 1879, under which the proceedings before us were originated and carried on.

One objection urged against the act of May 24, 1883, is, that it contains more than one subject. The act is, in effect, so far as concerns the record before us, but an amendment to the act of May 29, 1879, making perfect what, but for it, might be imperfect, and adding to its powers,—all in subordination to, and to accomplish, the object which forms the general subject of that act, namely, "the protection of land against surplus water, or, in other words, directing the flow of water for the protection of lands." This statute but supplements omitted details essential to the efficacy of that act.

Another objection urged is, that it is not competent for the General Assembly to provide for judgment against property, without notice, which, it is contended, is done by this act, if it be sustained as a curative act, and applicable to the present case. The rule is, that "if the thing which failed to be done, and which constitutes the defect in the proceeding, is something which the legislature might have dispensed with the necessity of by a prior statute, then a subsequent statute dis-

pensing with it retrospectively must be held valid." Cooley's Const. Lim. (1st ed.) 371; *Town of Fox* v. *Town of Kendall*, 97 Ill. 76; *Fairfield et al.* v. *The People*, 94 id. 253; *Cowgill* v. *Long*, 15 id. 202. We have already seen that, in our opinion, the General Assembly is left unrestricted by the amendment adopted at the November election, 1878, as to the manner of creating corporations for the construction of levees, drains, etc. We perceive no reason why it might not have been provided that such corporations should be created after publication of notice for one week, or, indeed, without any notice. Then, as to proceedings to charge lands with the amount of special assessments, no particular kind or length of time of notice is prescribed by the constitution, and it is not perceived why one week's notice, by publication, might not have been sufficient. And so, likewise, in regard to the details of making returns, the whole matter rested in the discretion of the General Assembly. All, therefore, that this act purports to cure, might, in the first instance, have been omitted, or been declared immaterial, and so is within the constitutional power of the General Assembly to cure.

The act of May 24, 1883, does not authorize judgment against property, without notice, but simply on different and shorter notice than that claimed to have been required by the act of May 29, 1879. We express no opinion as to the validity or effect of the act of May 24, 1883, as respects defective sales of real estate, made prior to the time it took effect.

The judgment is affirmed.

*Judgment affirmed.*