OLIVER TUCKER

*v.*

THE PEOPLE *ex rel.* A. L. Wall.

*Filed at Mt. Vernon April 2, 1895.*

1. DRAINAGE—*organization of district cannot be attacked collaterally.* The regularity of the organization of a drainage district cannot be collaterally attacked on an application by the county collector for judgment for taxes and special assessments.

2. SAME—*slight errors will not invalidate drainage assessment.* A drainage assessment will not be invalidated by slight errors in the proceedings of the commissioners, where they have substantially conformed to the statute, and the irregularities do not affect the substantial justness of the assessment.

APPEAL from the County Court of Wayne county; the Hon. J. C. EDWARDS, Judge, presiding.

H. TOMPKINS, for appellant.

CREIGHTON & COOPER, and KRAMER & BUNCH, for appellee.

Per CURIAM: This was an application in the county court of Wayne county, by the county collector, for judgment against delinquent lands for taxes and special assessments for the year 1890. A number of land owners in Union Drainage District No. 1, in Leech and Massilon townships, including Oliver Tucker, appeared and filed various objections to the application for judgment against their lands for a special assessment levied by the district. The court heard the evidence of the respective parties,

and after due consideration overruled all the objections and rendered judgment against each tract of land for the amount found to be due thereon. To reverse the judgment rendered against the land of Oliver Tucker, one of the objectors, he, and he alone, has appealed.

The first objection relied upon to defeat the judgment, as we understand appellant's argument, is, that the proceedings which led to the organization of the district did not conform to the act of June 27, 1885, under which the district was organized, and hence the district was not properly organized. But little need be said on this branch of the case. On an application for judgment for taxes and special assessments the land owner cannot collaterally call in question the regularity of the organization of the district. If the district was not organized according to law, and the drainage commissioners attempted to exercise powers which have not been legally conferred upon them, these are questions which can only be raised by a direct proceeding. (*Blake* v. *People*, 109 Ill. 504; *Evans* v. *Lewis*, 121 id. 478; *Railroad Co.* v. *Drainage District*, 134 id. 384.) It must, therefore, so far as this case is concerned, be taken as true that Union Drainage District No. 1, in Leech and Massilon townships, was organized according to law.

The only other question presented by the record is, whether the tax or assessment for which the county court rendered judgment against appellant's land was a legal, subsisting tax or assessment, and the solution of this depends upon the further question whether the commissioners of the drainage district, in the levy of the assessment, substantially complied with the Drainage act of June 27, 1885.

The district was organized on the sixth day of May, 1890. After the organization the commissioners inspected the lands in the district, and employed a civil engineer to make a survey and maps, and estimates of the cost of the work, etc. After the survey was made the commis-

sioners determined upon a system of drainage, as pro-
vided by section 17 of the Drainage act. The right of
way was procured, as provided by sections 18 and 19.
Section 21 of the act provides: "As soon as the plans
for the work have been determined, the commissioners
shall proceed to make special assessments for benefits
by classifying the lands in the district in tracts of forty
acres, on a graduated scale, to be numbered according to
the benefits to be received. The tracts of land which
will receive most and about equal benefits shall be
marked one hundred, and such as are adjudged to re-
ceive less benefit shall be marked with a less number,
denoting its per cent of benefits." On the ninth day of
December, 1890, the commissioners made a classification
under this section of the act, and, as appears from the
record, all the lands in the district were fully described
and numbered, as required by the statute. After the
classification was completed it was filed in the clerk's
office for inspection.

It is claimed that proper notice was not given the
land owners of the time and place the commissioners
would meet to hear objections to the classification of the
lands on the graduated scale. The objectors, on the
hearing, put in evidence a book containing a record of
the proceedings of the commissioners, and from that
record it appears that on the ninth day of December the
commissioners adjourned until December 27, 1890, and
before adjourning they entered an order requiring the
notice provided by section 23, to be given the various
land owners. From the record it also appears that on
December 27 the commissioners met, and found that the
required notices had been given, and so entered the fact
of record. It also appears, from the record, that most
of the land owners of the district appeared, and the
commissioners proceeded to hear all objections offered
to the classification, and on a full hearing the classifica-
tion was affirmed. There may have been slight errors,

but, so far as we are able to determine from the evidence produced on the hearing, the commissioners, on the classification of the lands, substantially conformed to the statute.

On the 10th day of January, 1891, the commissioners met for the purpose of ascertaining the amount of money necessary to complete the drainage system according to the plans that had been adopted, and passed a resolution that $8000 was required, and that $2000 should be levied, as a special assessment for drainage purposes, on the property benefited in the district, for the year 1891. This action was taken in conformity to section 26 of the Drainage act, and afterwards they caused to be made and filed in the town clerk's office a special assessment roll or tax list, as required by the same section. A number of witnesses testified that they saw this tax list in the clerk's office, and obtained from the list the amount of their respective assessments. It also appears, from the evidence, that this tax list was extended into a tax book containing all the lands and the amount assessed against each tract. This book passed into the hands of the district collector of the drainage district. After collecting such portions of the assessment as he was able to do, on the 10th day of March, 1891, the district collector filed with the county collector a delinquent list of all lands upon which he was unable to collect the assessment. It may be that slight errors intervened in the proceedings which led to the assessment, but we have not been able to discover any such irregularities as affected the substantial justness of the assessment.

We think the judgment of the county court was correct, and it will be affirmed.

*Judgment affirmed.*