# JOSIAH O. LOW, use, etc.

## *v.*

# WILLIAM C. BUCHANAN.

1.  STOCK CORPORATION—*liability of directors and officers assenting to an indebtedness exceeding capital stock.* Under the provisions of section 16, chapter 32, Rev. Stat, 1874, the directors and officers of a stock corporation who assent to an indebtedness in excess of its capital stock, are made personally and individually liable for such excess to the creditors generally of such corporation, and not to any particular creditor.

2.  The object and purpose of this section is that *all* claims arising under its provisions shall be regarded in the nature of a trust fund, to be collected and divided *pro rata* among all the creditors, and this distribution can only be made in a court of equity.

3.  SAME—*and herein of the remedy.* Where a stock corporation has incurred indebtedness in excess of its capital stock to various parties, the individual liability of its directors and officers assenting thereto can not be enforced by action at law at the suit of a single creditor, but the remedy is in a court of equity, where the rights and liabilities of all may be determined and properly adjusted.

4.  If such an action can be maintained at law by a single creditor on the ground there are no other creditors, he must set forth by proper averments in his declaration, and prove on the trial, the special circumstances warranting such an action.

APPEAL from the Appellate Court of the Fourth District; the Hon. TAZEWELL B. TANNER, presiding Justice, and the Hon. JAMES C. ALLEN and Hon. DAVID J. BAKER, Justices.

This was an action of assumpsit, brought by Josiah O. Low, trustee, for the use of the Grand Tower Mining, Manufacturing and Transportation Company, against William C. Buchanan, in the circuit court of St. Clair county, and tried before the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. THOMAS G. ALLEN, for the appellant.

Mr. CHARLES W. THOMAS, for the appellee.

Mr. Justice Mulkey delivered the opinion of the Court:

The Belleville Nail Mill Company was legally incorporated in St. Clair county, on the 1st day of June, 1869, under the act of the General Assembly of this State, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," approved and in force February 18th, 1857. By the terms of its organization its capital stock was limited to $161,000, all of which was paid in within four years from the date of incorporation.

On the 17th of November, 1875, William C. Buchanan, appellee, being one of its directors, was elected president of the company, and thereafter acted as such. On the 12th of January, 1876, the company being then largely indebted to various persons to an amount exceeding its capital stock, contracted the further indebtedness of $2483.48 for pig iron, purchased from appellant, which latter sum was in excess of the amount of the capital stock of the corporation, and the same was contracted through the agency of appellee, who, as an officer of the corporation, assented thereto; and the said indebtedness was due and unpaid at the time of the commencement of this suit.

On the 8th day of September, 1876, appellant commenced an action against appellee, in the St. Clair county circuit court, for the recovery of the above mentioned sum of $2483.48, due appellant from the Belleville Nail Mill Company, on the ground that the indebtedness was in excess of the capital stock of the company, and that appellee, as its president, had assented thereto at the time the indebtedness accrued. The form of action was assumpsit, and the declaration contained two special counts, the first of which is as follows:

That, "heretofore, to-wit, on the 5th day of January, 1876, at the county aforesaid, the Belleville Nail Mill Company, being then and there a stock corporation, created by and under the statute law of said State, with a capital stock limi-

ted to and not exceeding the sum of $161,000, was then and there indebted to its various creditors in various sums, amounting in the aggregate to a large sum of money in excess of and exceeding the capital stock of said stock corporation, to-wit, in the sum of $100,000 in excess of the capital stock of said corporation; and being so indebted, the said stock corporation then and there, by and with the assent of said defendant, who was at the time, then and there, one of the directors and president of said stock corporation, became indebted to the plaintiff for goods, wares and merchandise, then and there sold and delivered by plaintiff to said corporation, by and at the request of said defendant, then and there representing said corporation in his official capacity of president thereof, which last mentioned indebtedness, contracted and incurred as aforesaid by said stock corporation, amounted to a large sum of money, to-wit, the sum of $3000, and all of which said last mentioned sum then was and yet is in excess of the amount of the capital stock of said corporation, and which sum the said stock corporation has wholly neglected and refused to pay to plaintiff; whereby and by force of the statute in such case made and provided, the said defendant became personally and individually liable to pay to plaintiff the aforesaid last mentioned indebtedness of said stock corporation; and being so liable, said defendant, in consideration thereof, then and there, to-wit, on the day and year aforesaid, promised to pay to said plaintiff said last mentioned sum on request."

The second count, so far as it affects any question raised on the record in this cause, is substantially the same as the first.

To this declaration the plea of the general issue alone was filed, and a trial was had, by consent of parties, before the court without the intervention of a jury, which resulted in the court finding in favor of appellant for the sum of $2483.48, the amount sued for. Motions for a new trial and in arrest of judgment were made in their order and severally overruled, and thereupon judgment was entered in favor of appellant and

against appellee for the above mentioned sum of $2483.48. From this judgment an appeal was prosecuted to the Appellate Court of the Fourth District, which, at the February Term, 1878; of that court, resulted in a reversal of the judgment of the court below and a judgment against appellant for costs. From this latter judgment an appeal was prayed and allowed to this court, and appellant assigns for error the action of the Appellate Court in reversing, annulling and setting aside the judgment of the circuit court.

There was no controversy in the circuit court about the facts. The agreed statement of facts fully sustained the allegations in the declaration, and there was nothing in the evidence of appellee that at all affected the case made by appellant so far as the admitted facts are concerned.

If, as a matter of law, the averments in the declaration are sufficient to warrant a recovery, the judgment of the circuit court was right and that judgment should have been affirmed by the Appellate Court. If, on the other hand, the declaration disclosed no cause of action, the judgment of the circuit court was wrong, and the Appellate Court committed no error in reversing it.

Whether appellant is entitled to recover upon the case made in the declaration depends upon the construction to be given to section 16 of chapter 32 of the Revised Statutes of 1874, which is as follows:

"If the indebtedness of any stock corporation exceed the amount of its capital stock, the directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation."

The right of appellant to recover in the action instituted by him is based upon the hypothesis that where a corporation subject to the provisions of this section incurs an indebtedness in excess of the amount of its capital stock, the individual creditor acquires a right of action for such excess against so many of the directors or officers of the company as assented thereto, and that this right of action may be enforced in a

court of law. We are unable to concur in this view of the matter. Such a construction would, manifestly, lead in most cases to great difficulties and hardships. In all cases, where the corporation is insolvent, to allow the individual creditor to collect the whole amount of his claim against the corporation from a solvent officer of the company to the exclusion of other creditors whose claims are equally meritorious, would certainly be the grossest inequality and manifestly unjust. To illustrate: Here is a manufacturing corporation which is wholly insolvent; its indebtedness is already largely in excess of its capital stock; its affairs are controlled by six directors, three of whom are solvent and the other three are insolvent. In pursuance of the by-laws of the company, each of these directors, without the knowledge or assent of either of the others, on the same day, purchases, on account of the corporation, manufacturing material to the amount of $1000. These purchases are made from different material-men, neither of whom knows anything about the sales made by the others, and their claims upon the corporation are all equally meritorious. The corporation being wholly insolvent no part of these claims can be collected from it. It would therefore follow, if the construction of this section contended for by appellant be the true one, the three creditors who happened to sell to the insolvent directors would get nothing, while the other three would get the full amount of their claims. We can not believe the legislature ever intended such results, and that, therefore, the construction contended for is not the true one.

After a careful consideration of the matter, we have reached the conclusion that directors and officers of stock corporations who incur liabilities under the section in question, become bound and answerable, not to some particular creditor, but, in the language of the act, to the " *creditors* "—that is, all the creditors. This construction puts all the creditors upon a perfect equality, and is in conformity with the express words of the act. It was doubtless the object and purpose of the legislature that all claims arising under the provisions of the

section in question should be regarded in the nature of a trust fund, to be collected and divided *pro rata* among all the creditors. And if we are correct in this conclusion, it is quite manifest that this distribution of the fund could only be made in a court of equity.

But the conclusion we have reached does not rest solely upon the reasons here stated, and many others equally cogent that might be mentioned. In *Horner* v. *Henning et al.* 93 U. S. Reports, the Supreme Court of the United States gave a similar construction to an act of Congress, which, so far as it bears upon the question under consideration, is almost identical with the sixteenth section of our own statute. The act of Congress of May the 5th, 1870, being the same just referred to, authorized the formation of stock corporations within the District of Columbia, and contained among other things this provision: "If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company." The court, in construing this provision, held, in the case just referred to, that an action at law founded thereon would not lie, and Mr. Justice MILLER, in delivering the judgment of the court, among other things, said: "The remedy for this violation of duty as trustee is in its nature appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the incorporation may be resorted to for the payment of the debts; also, the number and names of the creditors, the amount of their several debts, to determine the sum to be recovered of the trustees and apportioned among the creditors in a manner which the trial by jury and rigid rules of common law proceedings render impossible." All that is said here applies with equal force to our own statute and the case at bar.

It is urged by appellant, however, by way of answer to the insurmountable difficulties that would necessarily arise in every action at law founded upon the statute where there are more creditors than one, that in the case before the court there is no evidence that there were other creditors of the company at the time appellant commenced his suit. Appellant's declaration charges that on the 5th day of January, 1876, the Belleville Nail Mill Company *was indebted to various creditors in various* sums, amounting in the aggregate to a large sum of money in excess of the capital stock of the corporation, to-wit, the sum of $100,000, and the declaration itself was filed on the 8th of September following. Now, assuming that appellant's right to maintain an action at law under the statute turned upon the question whether or not, at the time of the commencement of appellant's suit, there were other creditors of the corporation besides appellant, could the court, in the light of the admission in the declaration that only about nine months previous to the commencement of the suit the corporation was indebted *to various persons to the amount of* $100,000 *in excess of its capital stock,* assume without any allegation or proof to that effect, merely for the purpose of sustaining appellant's action, that all this indebtedness had prior to the commencement of the suit been discharged except what was due to appellant, and that he was then the only creditor? Surely not. Without expressing any opinion whatever as to whether an action at law would lie under the circumstances supposed, we are very clear that upon the hypothesis such action could be sustained under such circumstances, the plaintiff would be bound to set forth by proper averments in his declaration and prove on the trial the special circumstances warranting such an action. That was not done in this case, and hence the question raised by the supposed case is not before us.

It follows, from the views here presented, that the judgment of the circuit court was erroneous, and that the Appellate

Court properly reversed the same.    The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE WALKER:    I understand the above opinion does not, nor is it intended to overrule any previous decision of this court, but is simply a construction of section 16 of the General Incorporation act.    I therefore concur in the decision of this case.