## STONE *v.* CHISOLM & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH CAROLINA.

Submitted January 5, 1885.—Decided February 2, 1885.

A suit in equity is the proper remedy, in the courts of the United States, to enforce the statutory liability of directors to a creditor of a corporation, (organized under the act of the legislature of South Carolina of December 10, 1869), by reason of the debts of the corporation being in excess of the capital stock.  An action at law will not lie.

This was a writ of error prosecuted to reverse a judgment of the Circuit Court for the District of South Carolina, dismissing the complaint, in which the plaintiff asked for a recovery for the sum of $1,050, with interest from July 1, 1883.  The jurisdiction of this court depended upon and was limited by a certificate of division of opinion between the Circuit and District

Judges, before whom the case was tried, and was confined to the single question so certified whether the remedy of the plaintiff below was by an action at law, or by a suit in equity.

The allegations of the complaint were as follows:

" I. That the plaintiff, Roy Stone, is a citizen of the State of New York.

" II. That the defendants, Robert G. Chisolm, Samuel Lord, A. Canale, L. D. Mowry, Alfred Ravenel, and Sallie E. Conner, as executrix of James Conner, deceased, are citizens of the State of South Carolina.

" III. That heretofore, to wit, on the — February, 1881, the Marine and River Phosphate Mining and Manufacturing Company of South Carolina was a corporation under the laws of the State of South Carolina, with a paid-up capital stock of fifty thousand dollars, and no more; that said company was, by the terms of the charter, authorized to increase its capital stock, in the manner provided by law, to an amount not exceeding two hundred and fifty thousand dollars, and by an act amendatory of its charter, passed — December, 1882, the said company was further authorized to increase its capital stock to an amount not exceeding four hundred thousand dollars in the whole, inclusive of the stock then existing; that the company did, from time to time, between the said February, 1881, and 21st March, 1883, increase its capital stock to the sum of three hundred thousand dollars, that is to say, scrip for shares of capital stock to the par value of three hundred thousand dollars were issued; but, as the plaintiff is informed and believes, and so alleges and charges, of the additional amount of stock issued after — February, 1881, only the sum of twenty-five thousand dollars, or thereabouts, was ever actually paid in, making the entire aggregate of capital stock actually paid in not to exceed in all the sum of seventy-five thousand dollars.

" IV. That by an act amendatory of its charter, passed 21st December, 1882, the name of said Marine and River Phosphate Mining and Manufacturing Company was changed to the Marine and River Phosphate Company.

" V. That on the 21st day of March, 1883, the said Robert G. Chisolm, Samuel Lord, A. Canale, L. D. Mowry, Alfred.

Ravenel, and James Conner were directors of said company. That thereafter, to wit, July, 1883, the said James Conner departed this life, leaving a last will, whereof he appointed his wife, Sallie E. Conner, executrix, who has duly qualified thereon.

"VI. That on said 21st March, 1883, the said Marine and River Phosphate Company was indebted in an amount not less in the aggregate than seventy-five thousand dollars.

"VII. That on said 21st March, 1883, in the administration of the aforesaid directors, there were issued the following bonds, being a debt contracted by the said company additional to the debt existing as aforesaid, to wit:

"Sixty bonds or obligations of said company, bearing date the twenty-first day of March, 1883, and each conditioned for the payment to bearer of the sum of five hundred dollars on the first day of January, 1893, with interest thereon, payable semi-annually, at the rate of seven per cent. per annum on the presentment of the interest coupons therefor, attached to said bonds, and payable on the first days of July and January of each year. That an interest coupon for the sum of $17.50 became due on each of said bonds on the first day of July last past, and the same were, at maturity, duly presented for payment and payment refused, and no part of the same has been paid.

"VIII. That plaintiff is the lawful owner and holder of said bonds and coupons.

"IX. That the said bonds, so conditioned, for the aggregate sum of thirty thousand dollars, were in addition to the debt already existing as aforesaid, and constituted an indebtedness in excess of the capital stock of said company actually paid in as aforesaid.

"X. That by the 1367th section of the General Statutes of the State of South Carolina, and by the provisions of an act of the said State, approved 10th December, 1869, entitled 'An Act to regulate the formation of corporations' (under which act the said Marine and River Phosphate Mining and Manufacturing Company of South Carolina was incorporated), and by sundry other laws of said State, the said defendants are jointly and

severally liable to the plaintiff for the payment of the said bonds and coupons.

" XI. That the said Marine and River Phosphate Company is totally insolvent; that all its property is mortgaged to an extent far in excess of its value ; that, as plaintiff is advised, its property, consisting of personalty so mortgaged, is not subject to levy under execution ; and that, even if it were, plaintiff alleges and charges that there is no unencumbered property of said company subject to levy, and that judgment and execution would be wholly nugatory and fruitless to effect anything, as the encumbered property, upon a sale thereof, would not bring sufficient to discharge the liens on the same, and the execution creditors would only be cast in the costs of such levy and sale.

" XII. That by reason of the premises defendants are indebted to plaintiff, upon the coupons held by him as aforesaid, in the sum of one thousand and fifty dollars, and interest from the 1st day of July, 1883.

" Wherefore plaintiff prays judgment against said defendants for the sum of one thousand and fifty dollars, with interest from 1st July, 1883, and costs."

Thereupon the defendants demurred orally, on the ground—

" That the liability imposed by the statutes referred to in the complaint cannot be enforced in an action at law, but by a proceeding in equity only, and, consequently, that this being a court of law, has no jurisdiction to entertain the plaintiff's case."

And this question having been fully argued before the judges aforesaid, and their opinions thereupon being opposed, the point upon which they disagreed was stated as follows :

" Whether the liability imposed upon the directors of a corporation by the provisions of the statutes referred to in the complaint can be enforced by a single aggrieved creditor in an action at law against one or more directors, or whether such creditor must proceed by a creditor's bill in equity."

*Mr. William B. Earle* for plaintiffs in error.

*Mr. Theodore G. Barker* and *Mr. James Lowndes* for defendants in error.

Mr. Justice Matthews delivered the opinion of the court. He recited the facts as above stated, and continued:

The statutes referred to in the complaint are § 1367 of the General Statutes of South Carolina, the act of December 10, 1869, entitled "An Act to regulate the formation of corporations," and "sundry other laws of said State." This last reference would broaden the question certified, so as to embrace the inquiry whether the remedy insisted on was conferred by any law of the State; but counsel for the plaintiffs in error disclaim reliance upon any provisions of the statutes, except those specifically referred to, which they have accordingly printed with their brief.

§ 1367 of the General Statutes of South Carolina occurs in a general act on the subject of the organization and government of corporations, contained in the revision of 1882, in Chapter XXXVIII., under the sub-title "Of corporations organized under charters." It reads as follows:

"Sec. 1367. The total amount of debts which such corporations shall at any time owe shall not exceed the amount of its capital stock actually paid in; and, in case of excess, the directors in whose administration it shall happen shall be personally liable for the same, both to the contractor or contractors and to the corporation. Such of the directors as may have been absent when the said excess was contracted or created, or who may have voted against such contract or agreement, and caused his vote to be recorded in the minutes of the board, may respectively prevent such liability from attaching to themselves by forthwith giving notice of the fact to a general meeting of the stockholders, which they are authorized to call for that purpose. The provisions of this section shall not apply to debts of railroad corporations secured by mortgage."

This provision was a re-enactment of, and consequently superseded, a similar provision contained in section 33 of the act of December 10, 1869, under which the Marine and River Phosphate Company had been organized as a corporation, and which being a general law was subject to modification and repeal. The language of that section was as follows:

"Sec. 33. The whole amount of the debts which any such company at any time owes shall not exceed the amount of its capital stock actually paid in; and, in case of any excess, the directors under whose administration it occurs, shall be jointly and severally liable to the extent of such excess, for all the debts of the company then existing, and for all that are contracted, so long as they respectively continue in office, and until the debts are reduced to the amount of the capital stock; *Provided*, that any of the directors, who are absent at the time of contracting any debt contrary to the foregoing provisions, or who object thereto, may exempt themselves from liability by forthwith giving notice of the fact to the stockholders at the meeting they may call for that purpose."

The act of 1869 also contained the following:

"Sec. 35. When any of the officers of a company are liable, by the provisions of this act, to pay the debts of the company, or any part thereof, any person to whom they are so liable may have an action against any one or more of said officers, and the declaration in such action shall state the claim against the company and the grounds on which the plaintiff expects to charge the defendants, personally: and such action may be brought, notwithstanding the pendency of an action against the company for the recovery of the same claim or demand; and both of the actions may be prosecuted until the plaintiff obtains the payment of his debt, and the cost of both actions."

This section now appears as § 1401 of the General Statutes, but under a subdivision of "Provisions applicable solely to corporations under Class I.;" and this class is defined by § 1377 as "all labor, agricultural, manufacturing, industrial, mining, or companies or associations of like nature," the organization and government of which is the subject of Chap. XXXIX., entitled "Of corporations organized under general statutes."

On the other hand, § 1367 of the General Statutes, which, as we have seen, corresponds to and supersedes § 33 of the act of 1869, is contained in Chapter XXXVIII. of the General Statutes under the head "Of corporations organized under charters."

But § 1370 of the same chapter, under a subdivision designating "manufacturing companies," provides that "all manufacturing companies which shall be incorporated in this State shall have all the powers and privileges, and be subject to all the duties, liabilities and other provisions contained in §§ 1361 to 1369, inclusive, of this chapter, unless the said corporations be specially exempted therefrom by their respective charters."

It thus appears, that, although § 35 of the act of 1869 furnished the remedy for enforcing the liability imposed by § 33 of the same act, the former has been superseded by § 1401, and the latter by § 1367 of the General Statutes, but with a totally different relation in the latter, from that sustained by the corresponding sections in the former, so that it cannot be said that the action given by and described in § 1401 of the General Statutes applies as the remedy expressly prescribed for enforcing the liability imposed by § 1367. It follows that, if § 1401 applies to the Marine and River Phosphate Company, § 1367 does not. Either there is no such liability as is sought to be enforced in the present action, or the remedy resorted to cannot rest upon the section cited as expressly conferring it.

It is argued, indeed, on behalf of the defendants in error, that § 1367, which declares the liability of the directors in the case stated in the complaint, cannot apply, because the Marine and River Phosphate Company is not a corporation organized under a charter, but under a general law, that provision being applicable, it is said, only to those of the former description.

But we deem it unnecessary to consider and decide that question, because no special remedy being prescribed by statute for enforcing the liability defined by that section, from a consideration of its nature and the circumstances which are made the conditions of it, we are led to the conclusion that the only appropriate remedy in the courts of the United States is by a suit in equity.

The conditions of the personal liability of the directors of the corporation, expressed in the statute, are that there shall be debts of the corporation in excess of the capital stock actually paid in, to which the directors sought to be charged shall have assented, and this liability is for the entire excess

both to the creditors and to the corporation. To ascertain the existence of the liability in a given case requires an account to be taken of the amount of the corporate indebtedness, and of the amount of the capital stock actually paid in; facts which the directors, upon whom the liability is imposed, have a right to have determined, once for all, in a proceeding which shall conclude all who have an adverse interest, and a right to participate in the benefit to result from enforcing the liability. Otherwise the facts which constitute the basis of liability might be determined differently by juries in several actions, by which some creditors might obtain satisfaction and others be defeated. The evident intention of the provision is that the liability shall be for the common benefit of all entitled to enforce it according to their interest, an apportionment which, in case there cannot be satisfaction for all, can only be made in a single proceeding to which all interested can be made parties.

The case cannot be distinguished from that of *Hornor* v. *Henning*, 93 U. S. 228, the reasoning and result in which we reaffirm.

It is immaterial that in the present case it does not appear that there are other creditors than the plaintiffs in error. There can be but one rule for construing the section, whether the creditors be one or many.

To the question certified, therefore, it must be answered that an action at law will not lie, and that the only remedy is by a suit in equity.

The judgment is accordingly

*Affirmed.*