JAMES H. RICE CO. v. LIBBEY et al.

(Circuit Court, E. D. Wisconsin. February 28, 1898.)

CORPORATIONS—EXCESSIVE INDEBTEDNESS—LIABILITY OF OFFICERS AND DIRECTORS.

Under the Illinois statute making the officers and directors of a corporation, assenting thereto, personally liable for excess of indebtedness over capital stock (Rev. St. c. 32, § 16), such liability is secondary only, being conditional on the existence of a deficiency after the corporate assets are exhausted. It is also a joint liability, and limited to the pro rata share necessary to make good the deficit when known, and when all the contributors to the fund and the amount and value of their shares are ascertained. Hence, to determine the amount of their liability, an accounting is necessary, and the proceeding must, accordingly, be in equity, and the corporation is an indispensable party.

Smoot & Eyer, for complainant.
Henry Henderson, for intervening petitioners.
Barbers & Beglinger and W. N. Armington, for defendants.

SEAMAN, District Judge.    The complainant is a judgment creditor of the Farson & Libbey Company, an Illinois corporation, and files this bill in equity, in behalf of itself and all other creditors who may come in, to charge the defendants with the liability imposed by a statute of Illinois against officers of the corporation assenting to indebtedness incurred in excess of the amount of the capital stock.    The Farson & Libbey Company was incorporated under the statutes of Illinois, with capital stock of $50,000, engaged in the business of wholesaling lumber, sash, doors, and blinds, at Chicago, Ill., under the direct management of R. B. Farson, who was the resident secretary, treasurer, business manager, and one of the principal stockholders.    Daniel L. Libbey, of Oshkosh, Wis., was president and director until just prior to his death, December 25, 1894, when his son, Frank H. Libbey, also of Oshkosh, Wis., became a director in his place, and eventually president and director, so remaining when the corporation made a voluntary assignment for the benefit of creditors, on December 30, 1895.    During the times referred to, the corporation incurred indebtedness greatly in excess of the capital stock, and was so indebted when the assignment took effect.    The assignment was executed in Chicago, pursuant to the laws of Illinois, making Charles E. Pain, of Chicago, the assignee; and he testifies that a small dividend has been paid to the creditors from such collections as have been realized from the assets, and that other assets remain to be collected or disposed of, which will yield, in his opinion, not more than 5 per cent. additional upon the indebtedness.    No bill appears to have been filed in the state of Illinois, and the only defendants in this bill are (1) Frank H. Libbey and (2) the trustees representing the estate of Daniel L. Libbey, who, respectively, constitute, or represent the only officers of the corporation residing in Wisconsin.

Upon this state of the case, and aside from the inquiry whether Daniel L. Libbey and Frank H. Libbey, or either of them, assented to the excess of indebtedness within the meaning of the statute, or whether any liability was created in favor of present creditors against the estate of Daniel L. Libbey, or, if originally existing, whether it is now enforceable, the fundamental question is presented:    Can this court take cognizance of an original bill to charge the nonresident officer of the corporation with the liability created by this statute of Illinois, where neither the corporation, the assignee, nor the resident managing officer is a party, and where neither can be made parties in this forum?    No ground of liability is asserted which arises at common law, nor one predicated upon the contractual obligation assumed by the taking and ownership of stock; but, if any cause of action exists, it rests exclusively upon the terms of the Illinois statute.    Hornor v. Henning, 93 U. S. 228, 233.

The statute in question is section 16, c. 32, Rev. St. Ill., which reads as follows:

"If the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation, assenting thereto, shall be personally and individually liable for such excess, to the creditors of such corporation."

This provision has received construction by the supreme court of Illinois in several cases, and to the extent that the exposition there-

given was necessarily in the decision, and is found applicable here, it is controlling. Flash v. Conn, 109 U. S. 371, 378, 3 Sup. Ct. 263. In Low v. Buchanan, 94 Ill. 76, it was held that an action at law could not be maintained by a creditor to enforce the liability thus created; that it was designed for the benefit of all the creditors, and must be enforced in equity, where alone the distribution of the fund could be made. Following this decision, in Woolverton v. Taylor, 132 Ill. 197, 23 N. E. 1007, it became necessary to interpret section 16 in reference to a bill in equity filed by a creditor in behalf of himself and all other creditors to charge this liability against the officers of an insolvent corporation. Demurrer was taken, on the ground that the statute of limitation had run, because (1) the liability was penal and barred in two years, and (2) if not penal, it accrued at the creation of the indebtedness, and was barred in five years. Both propositions were overruled. (1) As to the first, it was held not penal, following Hornor v. Henning, 93 U. S. 228, and Low v. Buchanan, supra; that the statute did not declare it unlawful to contract indebtedness in excess of the capital stock, but left it allowable, limited only by the credit of the company, "as its assets might be of value for that purpose far beyond the capital stock," and thereupon the assenting directors become obligated to the extent of the excess in the nature of sureties; citing and approving the definition in 2 Mor. Priv. Corp. § 908. (2) And, in answer to the second objection, it again cites and approves Hornor v. Henning, supra, and Low v. Buchanan, supra, as correctly interpreting the scope and purposes of the act, namely, that the liability is not absolute, but enforceable only to the extent that the corporation fails to pay, and is "in the nature of security to all the creditors." As to the contention that this rule would require all the debts to have matured before the bill could be filed, the court holds that the interpretation calls for no such prerequisite for maintaining the bill by a single creditor, because the powers of a court of chancery are ample, as shown in Hornor v. Henning, to grant complete relief to all when the excess is shown and the assets are insufficient to pay all; that "the statute does not mean that the officers shall only become liable for one act of assenting to excessive indebtedness during the life of the corporation, for it may continue to increase under different officers; and, by a single bill against all the officers that excess may be recovered, and made a fund for the payment of all the debts." Subsequently, in Lewis v. Montgomery, 145 Ill. 30, 33 N. E. 880, the same doctrine was clearly reaffirmed, holding that "while the liability was not penal, but contractual, it is like that of a surety, and therefore stricti juris," and that the act of assent for which the officer was made chargeable must relate directly to the creation of the debt, and could not rest upon proof of indirect acts, such as recognition after it was contracted.

These decisions clearly establish for the statute in question the construction adopted by the supreme court of the United States for a statute of the District of Columbia of similar import, in Hornor v. Henning, 93 U. S. 228: That the officers who assent to such increase of the incorporate indebtedness are to be held guilty of a violation of their trust, and may be held liable to creditors so far as the excess of indebtedness was created with their assent respectively, and only to the

extent required to make good the debts of the creditors; that this liability is neither penal nor primary, and is not enforceable at law; that the sole remedy is in equity, where "the powers and instrumentalities of the court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts; also, the number and names of the creditors, the amount of their several debts, to determine the sum to be recovered of the trustees, and apportioned among the creditors"; that thereby "it adjusts the rights of all concerned on the equitable principles which lie at the foundation of the statute"; that under such provision the assenting creditors are made "jointly liable for a violation of their trust to all the creditors of the corporation who may be injured thereby," in marked distinction, as there pointed out, to the line of statutes declaring "the liability of stockholders to the amount of their stock, which is a part of the obligation assumed when the stock is taken, and which is an exact sum, ascertainable by the number of shares owned,"—a liability which is distinctly several. So regarded it is manifest that there is no ground for applying the authorities cited in behalf of the complainant wherein the statutory liability declared against stockholders in the state where the corporation is created is enforced elsewhere as a several liability in an action at law. Of such citations, Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, may be noted as the leading example, and Whitman v. Bank, 83 Fed. 288, as a leading and exhaustive opinion by the circuit court of appeals of the Second circuit, showing the distinctions which give transitory character to this latter class of statutory remedies. On the other hand, a class of cases from the state courts, cited on behalf of the defendants, holding that such remedies against stockholders shall not be given extraterritorial force, are not applicable in this court, at least so far as they relate to the enforcement at law of a liability declared to be several, under the doctrine which prevails in the United States courts, as recognized in Flash v. Conn, supra, and established by a uniform line of decisions. Of this class are Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419 (frequently referred to in defendants' brief), and Tuttle v. Bank, 161 Ill. 497, 44 N. E. 984. The right to enforce in this forum the equitable remedy created by the statute in question must be tested, first, by the terms of the statute, as above construed, and then by the general principles which govern in equity. If the statute prescribes a special remedy or conditions for enforcement, it is well settled that there can be no extraterritorial enforcement, unless such conditions are complied with. Pollard v. Bailey, 20 Wall. 520; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757. And, as a corollary, the remedy is local in character, at least in the first instance, if the conditions cannot be met in the foreign jurisdiction.

1. Referring to the terms of the statute, there is no express provision concerning the form of remedy in section 16, as above quoted; but the defendants insist that section 25 of the same chapter prescribes a remedy which is both appropriate and exclusive. It certainly seems to be appropriate to the enforcement of a liability under section 16, as it provides, respecting cases of forfeiture of charter or dissolution, or

failure to pay any judgment recovered against such corporations, that "suits in equity may be brought against all persons who were stockholders at the time, or liable in any way for debts of the corporation, by joining the corporation in such suit." While its other provisions refer only to the liability of stockholders, and include authority for appointment of receiver by courts of equity winding up the corporate affairs, all appear to be compatible with the proceeding against directors and officers, who are within the described class, as "persons * * * liable in any way for debts of the corporation." This contention on behalf of the defendants is not without force (see Terry v. Little, 101 U. S. 216), and, if sustained, must be decisive, as the corporation is not joined. But in view of the fact that section 25 appears to be ignored in the several decisions of the Illinois supreme court relating to the remedy under section 16, and of the importance of its bearing if it were regarded applicable, and because of the conclusions I have reached as to the requirements to maintain the action under the general principles of equity, my impressions of the effect of section 25 will not be made the ground of decision.

2. The decisions respecting statutory remedies of the character in question are uniform, so far as they have come to my attention, in holding, without express direction to that effect. that the remedy was enforceable only in equity, and not at law, founding such requirement upon the nature of the liability and the necessity of an adjustment of all rights and liabilities involved, for which purpose the powers and instrumentalities of a court of equity were adequate. and no such relief could be given in a court of law. Briefly summarized, the liability of the officers for assenting to an excess of indebtedness is not primary, but the debt remains that of the corporation, and the individual responsibility is like that of a surety, and, as further distinguished in the great leading case of Hornor v. Henning, supra, is joint, and not several. It is conditional upon the fact that a deficiency exists after all the corporate assets are exhausted, and is limited to such pro rata share as shall be necessary to make good that deficit when ascertained, and when all the contributors to the fund which is created by this statutory liability, and the amount and value of their shares therein respectively have been ascertained. For these purposes, an accounting is requisite.

As said in Stone v. Chisolm, 113 U. S. 302, 309, 5 Sup. Ct. 500:

"To ascertain the existence of a liability in a given case requires an account to be taken of the amount of the corporate indebtedness, and of the amount of the capital stock actually paid in,—facts which the directors, upon whom the liability is imposed, have a right to have determined, once for all, in a proceeding which shall conclude all who have an adverse interest, and a right to participate in the benefit to result from enforcing the liability. Otherwise the facts which constitute the basis of liability might be determined differently by juries in several actions, by which some creditors might obtain satisfaction. and others be defeated. The evident intention of the provision is that the liability shall be for the common benefit of all entitled to enforce it according to their interest, an apportionment which, in case there cannot be satisfaction for all, can only be made in a single proceeding, to which all interested can be made parties."

For the purpose of the accounting, and for the adjudication of the debts, the corporation is an indispensable party; and, for the purpose

of adjusting as to assets, it is probable that the assignee is also in this case a necessary party. See Harper v. Manufacturing Co., 100 Ill. 225. That the corporation must be joined in all such cases in equity, whether so provided by the statute or not, is directly held in Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691; Auer v. Lombard, 33 U. S. App. 438, 441, 19 C. C. A. 72, and 72 Fed. 209; Bank v. Dillingham, 147 N. Y. 609, 42 N. E. 338; Younglove v. Lime Co., 49 Ohio St. 663, 33 N. E. 234; and inferentially in Stone v. Chisolm, 113 U. S. 302, 5 Sup. Ct. 497.

The only feature in which the bill of complaint in this case differs from a complaint at law for the alleged cause of action is in the form in which the complainant sues, namely, in behalf of himself and all creditors of the corporation who may come in. In other words, it is equitable only on one side, calling for apportionment among the creditors, but with the liability to be determined as at law and as a several obligation. No apportionment or subrogation on behalf of the defendants or as to other contributors is possible. Therefore it fails to meet one of the most important objects of the requirement for enforcing the liability in equity, and not at law. This bill is not of the class known in equity as a "Creditors' Bill," nor would it be maintainable as such to enforce the liability alleged, which runs directly to the creditors, and not to the corporation, while a creditors' bill "merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation." In Hatch v. Dana, 101 U. S. 205, 211, this distinction is well pointed out, as well as that arising from the nature of the liability as proportional and fixed, definite and several. Furthermore, the circumstances disclosed in the case at bar furnish special reasons in support of the general propositions above stated. The bill concedes and the proofs show that assets of the corporation remain in the hands of the assignee, of which the value is not definitely ascertained, the valuation by the assignee being a mere estimate, which concludes no party in interest. If the extent of the liability of the defendants can be determined before the corporate assets are exhausted and applied, it seems manifest that the defendants are entitled to the benefit of such assets, by subrogation or otherwise; and neither this right nor any rights of contribution which may exist from any source can be determined in this action.

Upon the views indicated, I am satisfied that the statutory liability affords no ground for entertaining this as an original action against the individual defendants, and that the bill must be dismissed for want of equity. Whether the bill is capable of extraterritorial enforcement is a question not arising in the case as presented, and not, in my opinion, answered by the authorities cited from the supreme court of the United States. The doctrine pronounced in Illinois, in Young v. Farwell, 139 Ill. 326, 28 N. E. 845, and Fowler v. Lamson, 146 Ill. 472, 34 N. E. 932, and subsequent cases, may require consideration whenever that phase is presented. Neither is it necessary, in view of this conclusion, to pass upon the important question whether acts of assent appear on the part of the defendants, within the meaning of the statute, or to what extent they so appear. The testimony is practically undisputed, as to each, of knowledge, and in some meas-

ure of participation, in acts which tended to create indebtedness beyond the limit, but no evidence has been called to my attention of formal or official assent by either D. L. Libbey or Frank H. Libbey in his capacity as president or director; and, under the strict rule of construction applied in some cases under similar statutes, neither could be held liable. But I deem it proper to add, because of intimations contra at the hearing, that further investigation convinces me that the present creditors are not debarred from any benefit of acts of assent (if otherwise sufficient, on the part of D. L. Libbey, as well as of Frank H. Libbey) by the fact that their debts were subsequently contracted. The decisions in that regard in Illinois, as further exemplified in the same line in New York, must prevail in construing this statute, rather than the rule which appears to have the sanction of the supreme court of Tennessee under a similar statute. Decree accordingly.