## H. H. Kohlsaat, et al., v. Henry Lord Gay.

### Gen. No. 12,378.

1. CORPORATION—*when estoppel to deny does not exist.* Where it appears that a party dealing with an organization knows that it is not fully incorporated, no estoppel to deny the existence of such corporation will be enforced.

2. CORPORATION ACT—*section 16 construed.* This act is to be strictly construed, and being so construed, it is held not to apply to corporations *de facto.*

3. CORPORATION ACT—*how section 18 availed of.* The remedy authorized by section 18 of the Corporation Act is at law.

4. CROSS-ERRORS—*effect of failure to assign.* By failing to assign cross-errors, an appellee acquiesces in the findings of the decree in question.

Bill for accounting. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1905. Reversed and remanded with directions. Opinion filed April 5, 1906.

**Statement by the Court.** This is an appeal by H. H. Kohlsaat, John B. Waldo and Montgomery B. Gibbs, from a decree rendered against them at the suit of appellee. The original bill was filed July 15, 1896, against appellants and Stanley Waterloo, A. T. Packard, W. M. Knox, F. E. Johnson, George Schneider, and the Chicago Press Club Auxiliary Association. An amended bill against the same defendants was filed December 17, 1897. In the amended bill it is averred substantially as follows : About July 18, 1892, John C. Bundy, Stanley Waterloo and Wm. A. Taylor filed in the office of the Secretary of State a statement, in accordance with the act concerning corporations, setting forth that they proposed to form a corporation by the name " Chicago Press Club Auxiliary Association", its object being to " form and maintain, and assist in forming and maintaining, an organization for social intercourse among members of the press, and such others as may be provided by suitable by-laws, and for the cultivation of literature and the fine arts, and to provide and maintain a private library and reading rooms, and for the

collection of works of art, and to provide and hold, for the uses of such association, a suitable building, library, reading and assembly rooms in and about the premises, and for the proper uses of the association;" and it was also stated in said statement that the capital stock of the proposed corporation would be $1,000 divided into shares of $100 each; that the location of its principal office would be in Chicago, Illinois, and its duration ninety-nine years. Said statement was received and filed in the office of said secretary July 18, 1892, and, at said date, said secretary issued to said Bundy, Waterloo and Taylor a license to open books of subscription to the capital stock of the proposed corporation, which they did, and the stock was subscribed for as follows:

| NAMES. | SHARES. | AMOUNT. |
| --- | --- | --- |
| William H. Park, | 1 | $100 |
| Stanley Waterloo, | 1 | 100 |
| W. M. Knox, | 1 | 100 |
| F. E. Johnson, | 1 | 100 |
| A. S. Packard, | 1 | 100 |
| John B. Waldo, | 1 | 100 |
| Geo. Schneider, | 1 | 100 |
| James W. Scott, | 1 | 100 |
| Montgomery Gibbs, | 1 | 100 |
| H. H. Kohlsaat, | 1 | 100 |

From and after July 18, 1892, said Chicago Press Club Auxiliary Association (hereinafter called Auxiliary Association) assumed and exercised the functions, franchises, rights and privileges of a corporation, and continued to carry out the purposes of its incorporation as specified in the aforesaid statement, and was managed and held out to the world as a corporation, with the knowledge and acquiescence of all of the defendants; and complainant "was led by said defendants and each of them to deal with said Auxiliary Association as a corporation in fact and in law, knowing nought to the contrary." November 17, 1892, the Secretary of State issued to said Auxiliary Association a final certificate of incorporation. August 8, 1392, the mem-

bers and stockholders of said Auxiliary Association elected as directors the above named ten subscribers for stock, some for one and some for two years then next ensuing, and also elected H. H. Kohlsaat president, John B. Waldo secretary, and George Schneider treasurer, which persons accepted and entered upon the duties of said offices, respectively, and so continued. August 18, 1892, at a meeting at which all of said directors and officers were present, a resolution was unanimously adopted, which provided that the Auxiliary Association should enter into a contract with complainant, to act as its architect and perfect building plans, and have general supervision of the Press Club building then contemplated by said Auxiliary Association, for the compensation of five per cent. of the estimated cost of said building, and thereupon said Auxiliary Association, acting by its directors and officers, as aforesaid, so retained and employed complainant to perform said services and for said compensation, and complainant accepted said employment. It is then averred that complainant, by October 1, 1892, had completed preliminary plans for the building, which were accepted, and that he made working plans, and submitted an estimate that the cost of the building would be $125,000, which was accepted, etc. It is unnecessary to refer to the averments of all the services performed by complainant, as it is not contended that he did not render services as claimed, or that the sum decreed by the court to be paid to him is excessive.

In the early part of 1893 the Auxiliary Association, by reason of financial embarrassment, or for some reason unknown to complainant, abandoned the erection of the proposed club building, and notified complainant that it was unable to proceed, etc. Complainant then avers that the work he had done was worth the agreed price, etc., and that December 1, 1892, the Auxiliary Association paid him $1,000, but has since refused to pay him any more, and that the Auxiliary Association is insolvent. The prayer is, that an account be taken and that the individual defendants be decreed to pay, etc.

March 15, 1899, appellants and other defendants filed a joint and several answer to the amended bill, not on oath, as their oath was waived, denying all the material allegations of the bill, and averring, in substance, among other things, that complainant was one of the originators and prime movers of the proposal to form a corporation, and was thoroughly conversant with all the steps taken and which remained to be taken, in the formation of said corporation, and was present at all meetings at which any matter connected with said proposed corporation was acted on, and well knew of all that was lacking to complete said proposed corporation, etc.  A replication was filed to the answer, and the cause was referred to the master to take evidence and report his conclusions of law and fact.  The master reported adversely to the complainant and recommended that the bill be dismissed.  Objections were filed to the report before the master, which he overruled, and which the court ordered to stand as exceptions on the hearing, a number of which exceptions the court sustained and overruled others.  Among those overruled are complainant's exceptions 1, 2 and 8, which are as follows:

" 1.   For that said master finds and states in his said report that the organization of the said Chicago Press Club Auxiliary Association was the result of a suggestion made by complainant, for the reason that there is no evidence showing or tending to show the same."

" 2.   For that the said master finds and states in his said report that said complainant advised the organization of the Chicago Press Club Auxiliary Association for the purpose for which it was thereafter organized, for the reason that there is no evidence tending to show the giving or offering any advice by said complainant except in the architectural work of the construction of the proposed Press Club building."

" 8.   For that the said master finds in his said report that the said Gay, on August 18, 1892, knew that the charter from the Secretary of State of the said corporation had not been received or recorded, as there is no evidence showing or tending to show such knowledge of the complainant."

The court, by its decree, dismissed the bill, without costs

as to the defendants Packard, Johnson and Waterloo, found there was due to the complainant $2,070, and decreed that, under section 16 of the act concerning corporations, the defendants Kohlsaat, Waldo, Knox and Gibbs were, as officers and directors of the Auxiliary Association, liable to complainant, and adjudged and decreed accordingly.

McCULLOCH & McCULLOCH and JOSIAH BURNHAM, for appellants.

KRETZINGER, GALLAGHER, ROONEY & ROGERS, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This cause came to this court before on appeal from a decree sustaining a demurrer to the original bill and dismissing the bill. We reversed that decree and remanded the cause. In the original bill it was averred, as it is in the amended bill, that the Chicago Press Club Auxiliary Association assumed to be a corporation and held itself out in all respects as such, and that complainant "was led by the said defendants and each of them to deal with said Chicago Press Club Auxiliary Association in the matters hereinafter mentioned as a corporation in fact and in law, knowing nought to the contrary." Assuming, as we are bound to do, in passing on the demurrer, that the defendants held themselves out as a corporation, as stated in the bill, and that the complainant, knowing nothing to the contrary, dealt with them as such, we held that the defendants were estopped to deny that the Chicago Press Club Auxiliary Association was a corporation in fact and in law. 80 Ill. Appellate, 178. Quite a different case is presented by the record now before us. If the complainant knew that the Auxiliary Association had not received a certificate of complete organization from the Secretary of State, and, therefore, was not authorized to make contracts for the purposes of its contemplated organization, as specified in the statement made to the secretary, under section 2 of the statute, the defendants are not estopped to claim that the Auxiliary

Association was not a legally organized corporation August 18, 1892, when the contract with complainant is alleged to have been made. Davidson v. Young, 38 Ill. 145, 152; People v. Brown, 67 ib. 435; Powell v. Rogers, 105 ib. 318; Mut. L. Ins. Co. v. Amerman, 119 ib. 329, 336; R. R. Co. v. City of Belleville, 122 ib. 376, 383; Robbins v. Moore, 129 ib. 30, 54; Knapp v. Jones, 143 ib. 375, 382; Holcomb v. Boynton, 151 ib. 294, 300.

In Davidson v. Young, *supra*, it is said: " The doctrine of estoppels *in pais*, or equitable estoppels, is based upon a fraudulent purpose and a fraudulent result. If, therefore, the element of fraud is wanting, there is no estoppel; as, if both parties were equally cognizant of the facts, and the declaration or silence of the one party produced no change in the conduct of the other, he acting solely upon his own judgment. There must be deception and change of conduct in consequence, in order to estop a party from showing the truth," citing authorities.

In People v. Brown, *supra*, the court states the elements necessary to an estoppel, among which is: The party to whom the representation was made must have been ignorant of the truth of the matter; and in Holcomb v. Boynton, *supra*, it is said of estoppel: "The essential elements are misrepresentation or concealment of material facts, ignorance of the truth of the matter by the party to whom the representations were made, and reliance upon his part, in acting on the representations." To the same effect are the text-books. Bigelow's Law of Estoppel, 5th ed., p. 361, parag. 5; 11 Am. & Eng. Ency., 2nd ed., p. 434, parag. 5.

It would seem too plain for argument that a person of sound mind, knowing the very truth of a matter, cannot be misled or deceived in regard to it by the statements or conduct of others inconsistent with the truth.

The court in overruling complainant's exceptions 1, 2, and 8, found that the organization of the Chicago Press Club Auxiliary Association was the result of a suggestion made by the complainant; that the complainant advised

said organization, for the purpose for which it was organized, and that complainant, on August 18, 1892, knew that the charter from the Secretary of State had not been received or recorded. Complainant, appellee here, has not assigned any cross-errors; therefore he cannot contend here that the above findings of the court are erroneous, nor can we consider or review those findings. By failing to assign cross-errors, complainant has acquiesced in the findings. Vose v. Strong, 144 Ill. 108, 113; Heineck v. Grosse, 99 Ill. App. 441, 443. But even though cross-errors were assigned on the findings, this would not avail complainant. Frank E. Johnson testified that August 18, 1892, after the resolution of that date was passed, he told complainant in a room adjoining that in which the meeting was being held, that the action, in passing the resolution, was too previous and hasty; that they had no incorporation, and no money, and could not legally act, in witness' judgment. This witness also testified that he talked with complainant as often as twice a week in the first part of August, 1892; that he met him in the rooms of the club, and that complainant asked him, the witness, if they had the charter, and witness said he did not know just then, but that, a day or two before, they had not received it, and complainant said that -was strange, as such things usually came back in two or three days. Complainant denied that Johnson told him that they were not incorporated and could not legally make a contract, that the action was too hasty, etc., but, manifestly, it cannot be held that a finding that Johnson did so tell him, and, therefore, that he knew the Auxiliary Association was not incorporated when the resolution of August 18, 1892, was passed, is not sustained by the evidence.

Mr. Waldo testified that complainant was present at the meeting of August 18, 1892, and that some one said at that meeting that they were not organized and could not contract. He says he thought complainant was present when this was said, but could not say positively.

The complainant was a member of the Press Club, as the

Kohlsaat v. Gay.

master finds, of which the association was a mere auxili-
ary, as the name indicates, and had ample opportunity to
know what was going on in respect to the incorporation
of the Auxiliary Association, and the master finds that he
evinced considerable interest in having the incorporation
hastened and made some complaints, after the meeting of
August 18, 1892, that the steps to complete the incorpora-
tion were too slow, which finding is fully sustained by the
evidence, and the court overruled complainant's exception
8 to the finding.    Complainant put in evidence a circular
of date August 18, 1892, signed by Kohlsaat, Waldo and
Packard, which states, among other things, that the Aux-
iliary Association was duly incorporated; but Mr. Waldo
testified that the circular was not mailed, but was held,
owing to the delay in procuring the incorporation papers
from Springfield.    Complainant in his bill, after averring
the passage of the resolution of August 18, 1892, avers that
he accepted it, clearly indicating that the resolution was
the first step toward his employment as an architect.
The contrary is true.    It is conclusively shown by the evi-
dence, including complainant's own testimony, that he
anxiously sought the employment and that he sent to the
Auxiliary Association a formal written proposition that he
would perform the services in question for five per cent. of
the total cost of construction and completion of the build-
ing.    Complainant testified :    "It was probably in August
that I requested a contract.    I was informed that they
were going to meet, and I went over there and asked for
that resolution to be passed.    I said I wanted something
tangible to work on as a contract; I wanted them to offi-
cially pass on me as architect."    It is not improbable that
he drafted the resolution.    He was questioned and an-
swered as follows :

Q.    "Didn't you write the resolution?"    A.    "I have
no recollection of writing any such resolution."

Q.    "Do you deny it?"    A.    "I deny nothing of the
sort.    I have no remembrance of it at all."

He was a member of the Press Club, and the evidence

tends to prove that he was a leading spirit in procuring the organization of the Auxiliary Association, attended a number of the meetings of that association, frequently inquired how the matter of organization was progressing, and complained of the delay in its completion. Waldo, the secretary, testified that he sent complainant notices of when meetings would occur, and that he attended nearly all of them.

The utmost that complainant can claim in respect to the status of the Auxiliary Association August 18, 1892, if so much, is that it was a corporation *de facto*, and he bases his claim against the defendants on section 16 of the act concerning corporations. Thus, assuming that the Auxiliary Association was a corporation *de facto*, the question is presented whether section 16 includes corporations *de facto*. Sections 16 and 18 of the statutes are as follows:

" Sec. 16. If the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation, assenting thereto, shall be personally and individually liable for such excess, to the creditors of such corporation."

"Sec. 18. If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation, or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation."

There can be no question, in view of the statement made to the Secretary of State, which is in accordance with section 2 of the statute, that the attempt was to create a stock corporation. Section 16 must be strictly construed, and the liability of directors imposed by the section is, like that of a surety, *stricti juris*. Woolverton v. Taylor, 132 Ill. 197; Lewis v. Montgomery, 145 ib. 30. What, then, is meant by the words in the section, " stock corporation " and "such corporation"? What kind of corporation is meant?

Whether a *de facto* corporation, which, under the statute, cannot legally "proceed to business", or a corporation which, having fully complied with all the provisions of the act entitling it to a certificate of complete organization, has received such certificate and can legally "proceed to business" and exercise its granted corporate powers? We think the latter; that where the word "corporation" is mentioned in the section, without a qualification, a legally organized corporation, which has received and filed for record a certificate of complete organization, is meant, and not such as the Auxiliary Association was when the alleged contract is claimed to have been made. The section is, on its face, for the protection of creditors, and in Low v. Buchanan, 94 Ill. 76, the court held that it is for the benefit of all creditors. Now, legally there can be no creditors until a corporation is legally organized, because until then it cannot legally contract. Gent v. Manufacturers & M. Mut. Ins. Co., 107 Ill. 652; Loverin v. McLaughlin, 161 ib. 417; McCormick v. Market Nat. Bank, 162 ib. 100.

It is an elementary rule that "one part of a statute must be so construed by another, that the whole may, if possible, stand." 1 Blackstone, Sec. 89. And this is especially the rule when sections relate to the same subject. Lewis' Sutherland on Statutory Construction, vol. 2, sec. 344; Home Ins. Co. v. Swigert, 104 Ill. 653, 664. Section 18 of the act, quoted *supra*, includes, as we think, such associations as the Auxiliary Association was at the time of the alleged contract. Complainant, while stating facts in his bill showing that the Auxiliary Association was not a completely organized corporation, avers, in substance, that it claimed to be, in all respects, a corporation in fact and in law; in other words, that it pretended to be a corporation. Therefore, the Auxiliary Association was a "pretended stock corporation" and within the very words of section 18. But if section 16 includes pretended stock corporations and persons being or pretending to be officers, agents, or a board of directors of any stock corporation, or pre-

tended corporation, then section 18 is superfluous. But so to hold would be contrary to the rule of construction above mentioned.

The remedy under section 18 is at law, so that complainant cannot rely on that section in the present case. Loverin v. McLaughlin, 161 Ill. 417, 435. The Press Club was unincorporated and the Auxiliary Association was intended as a mere instrument or agency in carrying out its views. A lot on which to erect the proposed building was selected by the Press Club. The owners of the lot were not willing, for financial reasons, to lease it to the Press Club, but expressed a willingness to lease it to Mr. Kohlsaat individually, and so did, with the understanding that when the building should have progressed so far as to be sufficient security for the rent, the lease would be turned over to the Press Club and Mr. Kohlsaat released from his obligation as lessee. Mr. Kohlsaat carried the lease for a number of years, at an expense to him of $20,000, no part of which has been repaid to him by the club. The plan of the Press Club, which was well known to all the club members, including the complainant, was to issue bonds on the security of the lease and the proposed building, and erect the building with the proceeds of the sale of the bonds, which scheme fell through, the club not finding the bonds marketable. The master, in his report, says: "None of the members of the Auxiliary Association really owned any stock. It could not be sold, or transferred, to any one who was not so selected from the membership of the Press Club, and if a holder had died, his estate would have received nothing. It does not appear that any of the subscribers for stock, or holders thereof, ever paid anything for the stock. In fact, it was all held by these men, as agents or trustees for the Press Club; and the Association was really only the creature of the Press Club, being an instrument to be used in obtaining a building for the Press Club; and the said complainant was aware of these facts." These statements are fully sustained by the evidence. The master further says: "I can hardly believe that Mr. Gay,

Nat. Council Knights & Ladies of Security v. Burch.

when said resolution was passed, really expected to get his pay from said Association (whose capital stock he knew to be only $1,000) unless the bonds of the Association could be floated."

We fully concur with the master.   Complainant was a member of the Press Club, an active participant, with the other members, in a scheme on the success of which he relied for compensation for his services as architect, and the scheme having failed, he now seeks to hold liable his partners in it.

The decree will be reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*